Frank Kilgannon v. Commissioner.
Kilgannon v. Commissioner
Docket Nos. 737-64 and 4873-64.
United States Tax Court
T.C. Memo 1965-118; 1965 Tax Ct. Memo LEXIS 212; 24 T.C.M. (CCH) 619; T.C.M. (RIA) 65118; April 30, 1965
Frank Kilgannon, pro se. John B. Murray, Jr., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1961 and 1962 in the amounts of $347.13 and $442.92, respectively. Some of the issues raised in the pleadings have been disposed of by agreement of the parties leaving for our decision the following: (1) Whether *213 petitioner is entitled to a deduction for educational expenditures for each of the years 1961 and 1962, and if so, the amount of deduction to which he is entitled. (2) Whether petitioner is entitled to a deduction for medical and dental expenditures for the year 1961 in excess of the amount of such deduction allowed by respondent. (3) Whether petitioner is entitled to a deduction as an ordinary and necessary business expense of the amount of $50 for telephone calls and other expenses in connection with a professional fraternity of which he was a member. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner during the taxable years 1961 and 1962 was single and resided in West Hempstead, New York. He filed his individual Federal income tax return for each of these years with the district director of internal revenue, Manhattan District, New York, on the cash basis. In June 1960 petitioner received a Bachelor Degree in Business Administration from St. John's University, Jamaica, New York, with a major in accounting. Petitioner in his last year at high school, which he completed in June 1956, took an elementary course in accounting. *214 During the summer preceding his last year in high school, petitioner was employed by the Franklin National Bank in Levittown as a clerk. In September 1956, petitioner enrolled in the School of Commerce of Dayton University, and during his freshman year took, among other courses, accounting, business organization, industrial resources and products, and American economic history. The course in accounting was an introductory course dealing with such procedures as journal entries, posting, payrolls, voucher systems, depreciation, surplus reserves, and liquidation of corporations. During the first semester of his freshman year at Dayton University, petitioner was employed by People's National Bank in Dayton on a part-time basis as a "proof clerk." One of his principal duties was the closing out of each day's banking transactions. During the summer of 1957 petitioner was again employed by the Franklin National Bank, and in September 1957 entered his sophomore year at St. John's University, receiving credit for all of the courses he had taken at Dayton University during his preceding school year. During his sophomore year at St. John's University petitioner took, among other courses, *215 principles of economics, corporation law, negotiable instruments, contract law, agency law, cost accounting, and advanced corporate accounting. During the summer of 1958 petitioner was employed by the incorporated village of Garden City in the village clerk's office as an accountant. He also worked in this same position during his Christmas vacation in December of 1958. His duties in his employment by the village of Garden City included, among others, the writing of journals and the posting of various ledgers, reconciliation of bank accounts, preparation and reconciliation of payrolls, and preparation of monthly and quarterly financial statements. In September 1958 petitioner entered his junior year at St. John's University continuing to take courses in their school of Business Administration including such courses as real property law, sales law, economics, statisties, business mathematics, bailments and carriers, and an accounting course. In June 1959 petitioner returned to his position with the village of Garden City where he performed work similar to that performed the prior summer but was given some more difficult assignments. In September 1959, petitioner did not return *216 to St. John's University on a fulltime program but attended St. John's on Tuesdays and Thursdays and worked from 9:00 a.m. to 5:00 p.m. on Mondays, Wednesdays, and Fridays for the village of Garden City. On Tuesdays and Thursdays he took courses from 9:00 a.m. to 10:30 p.m. The courses he took included advanced auditing, advanced theory of accounting, and Federal income taxation. In December 1959 petitioner applied for employment with a firm of certified public accountants since he desired to begin to obtain the 3 years' experience required to become eligible to be licensed as a certified public accountant in the State of New York. He was employed by the firm of S. D. Leidesdorf and Company with the understanding that he would begin his work for that firm in January or February 1960. Petitioner continued his employment with the village of Garden City until he began his work for S. D. Leidesdorf and Company. Petitioner continued his work at St. John's University attending evening courses on Monday, Tuesday, and Thursday evenings in his final semester, starting in February 1960. During the final semester, petitioner's courses included advanced cost accounting, analysis of financial *217 statements, and Federal income taxation. Petitioner in his employment by S. D. Leidesdorf and Company did work in connection with a number of audits in the preparation of tax returns as well as audits to be used as reports to stockholders of corporations. In May or June 1960, petitioner and other employees of S. D. Leidesdorf and Company participated in a staff training program conducted by that accounting firm for their own employees including training in all phases of audit. During the summer of 1960 petitioner took a review course in preparation to take one part of the four-part examination for certified public accountant in the State of New York. The part of the examination for which petitioner was preparing was that known as theory of accounting. On October 18, 1960, petitioner filed an application accompanied by a check for $40 to take the theory of accounting portion of the CPA examination to be given in November 1960. His application and check were returned to him because his application had not been filed at least 30 days prior to the examination date as required by the Bureau of Professional Licensing Services of the State of New York. During the summer of 1960 petitioner *218 was considering whether to continue in advanced studies, and if so, whether to attend a graduate business school or to attend law school. In September 1960 he enrolled in New York University School of Law as a candidate for an LLB degree. During his work with S. D. Leidesdorf and Company, petitioner had become aware that a number of men on the auditing and tax staff of that firm had legal training. He personally knew four or five members of the company's staff who had legal training and also knew other members of the staff who had obtained advanced degrees in areas such as finance, general business systems and procedures, and management services. Petitioner's work with S. D. Leidesdorf and Company required many hours of overtime and he found this requirement combined with the work required in his law school courses to be arduous. In December 1960, there came to petitioner's attention, through his brother, the fact that James J. Sullivan, a CPA, had an opening on his staff which position did not require overtime work. Prior to this information coming to his attention in December, petitioner had not sought other employment since going with S. D. Leidesdorf and Company. On January 1, 1961 petitioner *219 became an accountant on the staff of James J. Sullivan, a Certified Public Accountant, doing work similar to the work he had done with S. D. Leidesdorf and Company. During the year 1962 petitioner wrote an article entitled, "Opportunities for You in Accounting" which was published in the Magazine of Beta Epsilon Rho, a business fraternity. In February 1963 while still employed by James J. Sullivan and still attending law school at New York University, petitioner obtained a teaching position with Nassau Community College, teaching introduction to business, business law, and accounting, and has continued to teach one of these three courses each semester since that time. In the summer of 1963 petitioner resigned from his position with James J. Sullivan and accepted employment by the Professional Development Division of the American Institute of Certified Public Accountants. At the American Institute his primary responsibility was the preparation of tax courses which would be taught to certified public accountants. In his work in the Professional Development Division of the American Institute of Certified Public Accountants petitioner worked with a number of individuals who were *220 practicing certified public accountants and also had legal training, some of whom were members of the bar. While working at the American Institute of Certified Public Accountants, petitioner, in connection with his employment, attended several training courses conducted by the New York State Society of Certified Public Accountants. In January 1964 petitioner published an article entitled, "Payments to a Retiring Partner under Section 736 of the Internal Revenue Code" for which he received an Author's Certificate of Commendation from the Newark, New Jersey chapter of the National Association of Accountants. In June 1964 petitioner received his law degree from New York University. In July 1964, he successfully passed the Bar examination of the State of New York, and at the time of the trial of this case was awaiting admission to practice. Toward the end of July 1964 petitioner was offered a position in the office of the Vice President for University Development of New York University, which position he accepted and commenced his employment there on October 1, 1964. During the calendar years 1961 and 1962, the courses which petitioner took at New York *221 University included contracts, crimes, introductory seminar, procedure, torts, property, agency and partnership, constitutional law, remedies, corporations, trusts and estates, commercial law, evidence, Federal taxation of income, and international law. The knowledge petitioner obtained from his study of these courses at New York University Law School was of direct benefit to him in his accounting work with James J. Sullivan during the years 1961 and 1962. Many of the persons employed as accountants by the American Institute of Certified Public Accountants have legal training and some have law degrees and are members of the bar. In November 1962 petitioner took the Certified Public Accountants Examination for the State of New York but was not successful. He plans to again take the examination for certified public accountant. During the years here involved petitioner held membership in organizations whose members were accountants. In connection with the claimed deduction for educational expenses petitioner answered a questionnaire on a form used by the Internal Revenue Service for the purpose of obtaining additional information when a deduction for educational expenses has been *222 taken on a taxpayer's return. Petitioner answered the question on this form, "Was the education undertaken in order for you to retain your employment, salary or status?" by making a mark in the box next to the word "Yes," but did not attach any statement from his employer as requested on the form. Under the space headed "Please state the primary purpose of obtaining the additional education and show the relationship between the courses taken and your employment during the period indicated * * *," petitioner stated, "To maintain and improve the skills required in my profession and to maintain my status on an equal basis with others in my profession." Petitioner submitted a letter dated November 21, 1962, to the Internal Revenue Service, in connection with the information shown on the form which he filled in (form 2519), the body of which was as follows: I have checked item #6 on form 2519. Item 8B cannot be answered as my status at this time is uncertain as to whether or not I am a candidate for a degree. I do not feel that I should ask my employer to sign a statement as to issue involved. He is a CPA and my reluctance to ask him for such a statement is because of this fact. *223 During the calendar year 1961 petitioner paid for tuition to New York University, without considering a scholarship and loan credited to his account, the amount of $494, and in the calendar year 1962, he paid as tuition to New York University, without consideration of similar items, $547. Petitioner expended the sums of $350 and $325 for books during the calendar years 1961 and 1962, some of which were necessary to the courses he was taking at New York University Law School. The books which petitioner purchased with the expenditures in 1961 and 1962 included some books on accounting, the 1962 and 1963 Master Tax Guide published by Commerce Clearing House and a number of books on Federal taxation, as well as certain legal textbooks. The amount expended by petitioner on books necessary to his studies at New York University was $75 in each of the calendar years 1961 and 1962. In order to attend classes at New York University petitioner either had to take a subway from the office where he was employed to the place where his class was held or go from the office of a client of the firm for which he was working where he might be engaged in work at the close of the day to the place where *224 his class was held either by available public transportation, or if he had driven his personally owned automobile to the client's office, by driving from the client's office to the place where his class was held. When petitioner had to go from the office of the firm by which he was employed as an accountant to a client's office, he would be reimbursed for the transportation cost of going to the client's office and returning to the office where he was employed, unless it was expected that he would return to his home from the client's office in which event he might only be reimbursed for the trip to the client's office. Petitioner kept no records of his transportation costs during the calendar years 1961 and 1962. The cost of transportation incurred by petitioner, occasioned solely by his attendance at law school, was $50 in each of the calendar years 1961 and 1962. Petitioner was a member of an organization known as Beta Epsilon Rho. During the calendar year 1961 he attempted to organize an alumni association of this society, consisting of the alumni of St. John's University who had been members of the society of an undergraduate level. He planned for the alumni association to establish *225 investment clubs and also to establish contacts between the members of the association. He made some telephone calls and wrote some letters in connection with his effort to establish the alumni association. During the calendar year 1961 petitioner incurred expenses for medical treatment and for drugs, included among which was a payment to Mercy Hospital of $319 covering expenses in that hospital while he was there during the month of September for an operation. Petitioner carried hospital insurance which reimbursed him for some of the cost of his medical expense. The hospital insurance policies which petitioner carried were with Fidelity & Casualty of New York, which was a policy issued to students attending New York University, and with Associated Hospital Service of New York, which was the typical Blue Shield, Blue Cross coverage. Petitioner on his income tax return for the year 1961 claimed a deduction in the amount of $1,500 for educational expenses, a deduction of $608.76 for medical expenses which was arrived at by subtracting from $100 listed as the cost of medicine and drugs an amount of $47.81 listed as 1 percent of adjusted gross income, other medical and dental expenses *226 of $700 which was explained as consisting of $900 of such expenses less $200 of insurance reimbursement, making a total of $752.19 from which was subtracted 3 percent of adjusted gross income in the amount of $143.43, leaving deductible expenses of $608.76. Petitioner claimed a deduction for "phone calls re business organization" of $50. For the year 1962 petitioner claimed a deduction for educational expenses in the amount of $1,475 which was explained as consisting of tuition of $1,000, books, pamphlets, and notes of $325, and travel of $150. Petitioner for the year 1962 claimed a deduction in the amount of $50 explained as "phone calls re business organization." Respondent in his notice of deficiency for the year 1961 disallowed the entire deduction for educational expenses of $1,500 claimed by petitioner and disallowed $144.85 of the deduction claimed by petitioner for medical and dental expenses making a total increase in the income as reported by petitioner of $1,644.83. For the calendar year 1962 respondent's notice of deficiency does not show what items were disallowed in making his determination. However, each party at the trial stated that among the deductions disallowed *227 by respondent in the year 1962 was the $1,475 claimed by petitioner as educational expenses and the $50 claimed to be deductible for "phone calls re business organization" in that year. Ultimate Fact Expenditures in the amounts of $619 and $672 made by petitioner in connection with his legal courses at New York University during the calendar years 1961 and 1962, respectively, were primarily for the purpose of improving the skills required in his employment as an accountant during those years. Petitioner takes the position that under the provisions of section 1.162-5 of respondent's regulations [1] he is entitled to deductions for educational expenses in each of the calendar years 1961 and 1962 since the education he undertook was primarily for the purpose of maintaining or improving skills required in his employment as an accountant, although he recognizes that the amount he claimed as deduction for such expenses is excessive to some extent. *228 It is respondent's position that no amount spent by petitioner in connection with his courses at New York University Law School during the calendar years 1961 and 1962 is deductible. Respondent takes the position that the expenditures were personal in nature and not deductible by virtue of section 262 of the Internal Revenue Code of 1954. It is respondent's position that the courses of study undertaken by petitioner were primarily for the purpose of acquiring a new skill or profession and to fulfill his general educational aspirations. The issue is one of fact. Compare Condit v. Commissioner, 329 F. 2d 153 (C.A. 6, 1964), affirming a Memorandum Opinion of this Court holding that law school courses were taken by an accountant employed by two affiliated industrial concerns primarily for the purpose of qualifying to meet the minimum standard of the legal profession and not to improve or maintain skills required or used by him in his employment, with Welsh v. United States, 329 F. 2d 145 (C.A. 6, 1964), in which a decision of a United States District Court holding that the primary purpose of the taxpayer there involved in enrolling in *229 law school was to maintain or improve the skills required of him in his employment in the Intelligence Division of Internal Revenue Service. Petitioner in the instant case had been engaged since his high school days in work of an accounting nature and was employed as an accountant with a CPA firm at the time he enrolled in law school. He was so employed but with a different firm during the 2 calendar years here in issue. Petitioner was active in organizations of accountants. He was aware that it was not uncommon for accountants to study law and even for some accountants to obtain law degrees and become members of the Bar, even though they continued entirely in accounting work. We are convinced from the evidence as a whole that petitioner's primary purpose in pursuing legal studies during the calendar years 1961 and 1962 was to improve his skills as an accountant and have so found as an ultimate fact. Certainly, the fact that petitioner commenced his legal studies shortly after obtaining his Bachelor's Degree with a major in accounting indicates that he reasonably expected to advance in his work as an accountant because of his further education and the improvement of his skills *230 obtained thereby. Such expectation does not render the expenses incurred with respect to petitioner's education nondeductible since his primary reason for undertaking the education was to improve his skills in the position he was then holding. Cosimo A. Carlucci, 37 T.C. 695 (1962). Our findings of fact also dispose of the issues as to the amount of educational expenses deductible by petitioner. The expenses for tuition in the amount of $474 and $547 in the years 1961 and 1962, respectively are deductible. In addition petitioner is entitled to a deduction in each of these years in the amount of $125 composed of $75 for books and $50 for transportation. Petitioner contends that he is entitled to deduct $350 for books in 1961 and $325 in 1962. Petitioner introduced a list of the books that he purchased and it is apparent from the list and also from his testimony that many of the books were not necessary to his studies at New York University. Since petitioner produced no breakdown of which books were necessary to his studies at New York University or even of what books he bought in 1961 as distinguished from 1962, we have weighed heavily against petitioner for lack of *231 precise records and determined that only $75 of the amount expended in each of the years is properly deductible. Petitioner kept no records as to the amount he expended for transportation in going to his law school classes. Petitioner estimated that he spent $150 for transportation in 1961 and $125 in 1962. Petitioner is not entitled to any transportation costs other than those necessitated by his attending law school at a place removed from his place of business. The fact that he attended law school would not entitle him to a deduction for his normal commuting expenses from his home to his office and return. Also, if petitioner were in the general location of the law school on work for his employer and had been reimbursed by his employer for transportation to the place where he was doing accounting work for his employer prior to going to the law school, he would not be entitled to a deduction for any portion of the transportation for which he was reimbursed by his employer. Petitioner's claimed deduction was purely an estimate, and again weighing heavily against petitioner for failure to keep accurate records we have determined that he incurred $50 transportation expenses in each *232 of the years 1961 and 1962 in connection with his attendance at classes at New York University. Petitioner introduced receipts and cancelled checks showing an amount of medical expenses approximating the $900 shown by his return as medical expenditures in the year 1961. However, he was totally unable to substantiate the amount of reimbursement which he received through his insurance. Therefore, for failure of proof on the part of petitioner, respondent's determination with respect to the disallowance of the medical expenses to the extent of $144.83 for the year 1961 is sustained. With respect to the expenses for telephone calls, the deduction claimed by petitioner for such expenditures on his return for the year 1961 in the amount of $50 was not disallowed by respondent. Petitioner's testimony at the trial was that his telephone expenses were in 1961. In this regard petitioner testified: * * * and I made phone calls of which I have no check amount substantiation and which I felt a reasonable estimate was $50. As I say, this organization attempted to organize things like investment clubs. I must say it was rather unsuccessful, and I am again trying this year to get it organized. *233 It was sort of dormant. This was in 1961. Expenses were incurred, but it was sort of dormant until then because we were unsuccessful in getting it going, and now we are going to try again. I have no substantiation of the fact that I belong to this organization other than the fact that I belong to this organization and try to establish it in a going manner, and we were unsuccessful in doing so and I estimated an amount of money for it. A deduction of $50 was also claimed by petitioner in 1962 and the assignment of error contained in the amendment to the petition filed by petitioner is with respect to the disallowance of the $50 deduction in the year 1962. Petitioner in his testimony referred to expenses for 1961. If this reference to the year 1961 was correct, there is no support at all in the record for the claimed deduction in 1962. If petitioner intended to refer to the year 1962, he has still failed to show either the amount of the claimed expenditure, or if any amount were expended that it was in fact for a business purpose. There is certainly nothing in petitioner's testimony to indicate that he tried both in 1961 and in 1962 to organize a Beta Epsilon Rho Alumni Association. *234 We therefore hold that petitioner has failed to establish that he is entitled to a $50 deduction in the year 1962 for business expenses in connection with an attempt to organize a Beta Epsilon Rho Alumni Association. Decision will be entered under Rule 50. Footnotes
1. Sec. 1.162-5, Income Tax Regs. Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. Expenditures for education of this type described in subparagraph (2) of this paragraph are deductible under subparagraph (2) only to the extent that they are for the minimum education required by the taxpayer's employer, or by applicable law or regulations, as a condition to the retention of the taxpayer's salary, status or employment. Expenditures for education other than those so required may be deductible under subparagraph (1) of this paragraph if the education meets the qualifications of subparagraph (1) of this paragraph. A taxpayer is considered to have made expenditures for education to meet the express requirements of his employer only if the requirement is imposed primarily for a bona fide business purpose of the taxpayer's employer and not primarily for the taxpayer's benefit. Except as provided in the last sentence of paragraph (b) of this section, in the case of teachers, a written statement from an authorized official or school officer to the effect that the education was required as a condition to the retention of the taxpayer's salary, status, or employment will be accepted for the purpose of meeting the requirements of this paragraph. (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.↩