**Herbert A. HUENE, Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

United States District Court
S. D. New York.

Oct. 18, 1965.

Haskell Edelstein, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. S. D. New York, for defendant; Bruno Lederer, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

This is an action for the recovery of federal income taxes in the amount of $694, plus interest, which the plaintiff claims were illegally and erroneously collected from him for the years 1956, 1957 and 1958.

### ISSUES PRESENTED

The issues are as follows:

I. Whether the plaintiff's expenses in attending the New York University Graduate School of Business in 1956 and 1957 and the New York University Law School in 1957 and 1958 were "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" within the meaning of Section 162 of the Internal Revenue Code of 1954?

II. Whether the foregoing expenses are deductible under any other provision of the Internal Revenue Code of 1954?

### STATUTES

Section 162 of the Internal Revenue Code of 1954 provides as follows:

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

The Treasury Regulations under the Internal Revenue Code of 1954, Section 1.162–5, outline the circumstances under which education expenses are deductible as ordinary and necessary business expenses under Section 162. The regulations provide:

"1.162–5. Expenses for education.—(a) Expenditures made by a taxpayer for his education are deductible if they are for education (in-

cluding research activities) undertaken primarily for the purpose of:

"(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

"(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purpose described in subparagraph (1) of this paragraph. Expenditures for education of the type described in subparagraph (2) of this paragraph are deductible under subparagraph (2) only to the extent that they are for the minimum education required by the taxpayer's employer, or by applicable law or regulations, as a condition to the retention of the taxpayer's salary, status, or employment. Expenditures for education other than those so required may be deductible under subparagraph (1) of this paragraph if the education meets the qualifications of subparagraph (1). A taxpayer is considered to have made expenditures for education to meet the express requirements of his employer only if the requirement is imposed primarily for a bona fide business purpose of the taxpayer's employer and not primarily for the taxpayer's benefit. Except as provided in the last sentence of paragraph (b) of this section, in the case of teachers, a written statement from an authorized official or school officer to the effect that the education was required as a condition to the retention of the taxpayer's salary, status, or employment will be accepted for the purpose of meeting the requirements of this paragraph.

"(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

\* \* \* \* \*

"(e) The provisions of this section may be illustrated by the following examples:

"Example (1). A is employed by an accounting firm. In order to become a certified public accountant he takes courses in accounting. Since the education was undertaken prior to the time A became qualified in his chosen profession as a certified public accountant, A's expenditures for such courses and expenses for any transportation, meals, and lodging while away from home are not deductible." [1]

---

[1] The word "primarily" in tax statutes such as that involved here "is unambiguous and has a well-recognized and understood meaning." It has been construed in vari-

The case was tried to the court without a jury. After hearing the testimony of the parties, examining the exhibits, the pleadings, the stipulations of counsel, the briefs and proposed findings of fact and conclusions of law, and after hearing reargument on September 17, 1965, a portion of which was recorded, and examining the memoranda and other papers submitted by the parties on reargument, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. In June 1953 plaintiff was graduated from Haverford College, receiving the Degree of Bachelor of Arts.

2. Soon after graduation from Haverford, plaintiff went to work for his father's accounting firm, Arthur H. Huene & Co., in New York City.

3. Plaintiff continued to be employed by Arthur H. Huene & Co. until December 1953, at which time he went into active duty in the United States Navy. In 1954 and 1955 he was stationed in the Far East. While stationed in the Far East he was enrolled in three USAFI correspondence courses.

4. Commencing on March 15, 1956, plaintiff was assigned by the Navy to the Brooklyn Army Terminal, First Avenue and 58th Street, Brooklyn, New York. This assignment continued until June 17, 1957, at which time plaintiff was honorably discharged. During this assignment, since there were no living quarters at the Brooklyn Army Terminal, plaintiff resided at his parent's home at 93-30—224th Street, Queens Village, New York and commuted each day by private automobile to the Brooklyn Army Terminal.

5. After discharge from the Navy, plaintiff continued to reside at 93-30—224th Street, Queens Village, New York until September 25, 1957, on which date he moved to 33 Washington Square West, New York, N. Y.

6. In June 1956, while stationed at the Brooklyn Army Terminal, plaintiff entered the New York University Graduate School of Business at 90 Trinity Place, New York City as an evening school candidate for the Degree of Master of Business Administration.

7. By September 1957, plaintiff had completed 56 credits at the New York University Graduate School of Business and in October 1957 was awarded the Degree of Master of Business Administration.

8. On August 1, 1957, plaintiff commenced employment with Lybrand, Ross Bros. & Montgomery (hereinafter "Lybrand"), one of the largest public accounting firms in the United States.

9. During August 1957, plaintiff attended the Lybrand Training School in Madison, New Jersey and commuted from there to attend classes at the New York University Graduate School of Business.

10. In September 1957, plaintiff entered the New York University Law School as a candidate for the Degree of Bachelor of Laws. During June 1958 he again attended the Lybrand Training School in Madison, New Jersey, commuting from there to the New York University Law School. In August 1958, plaintiff served as an instructor at the Lybrand Training School in Madison, New Jersey, commuting from there to the New York University Law School to attend classes.

11. In June 1961, plaintiff was awarded a Bachelor of Laws Degree from New York University Law School and shortly thereafter was admitted to the New York Bar.

12. The following deductions are claimed by the plaintiff for his tax years 1956, 1957 and 1958. The defendant

ous types of cases of federal and state courts as meaning "of first importance or principally." See Municipal Bond

Corp. v. C. I. R., 341 F.2d 683, 688 (8th Cir. 1965) and cases therein cited.

agrees that the amounts listed for tuition, books and fees were actually spent for those purposes, but disputes the deductibility of all the amounts listed:

### New York University
### Graduate School of Business

1956

| | |
|---|---|
| Tuition | $ 710.00 |
| Books | 70.00 |
| Transp. and Tolls | 166.40 |
| Total 1956 | $ 946.40 |

### New York University
### Graduate School of Business

1957

| | |
|---|---|
| Tuition | $ 780.00 |
| Books | 60.00 |
| Transp. and Tolls | 321.20 |
| Misc. Fees | 15.00 |
| | $1,176.20 |

### New York University
### Law School

| | |
|---|---|
| Tuition | $ 232.50 |
| Books | 50.00 |
| Misc. Fees | 12.50 |
| | $ 295.00 |
| Total 1957 | $1,471.20 |

1958

| | |
|---|---|
| Tuition | $ 510.00 |
| Books | 100.00 |
| Transp. and Tolls | 238.00 |
| Total 1958 | $ 848.00 |

(Tr. 3–7, Pl. Exs. 1–6)

13. At Haverford College plaintiff majored in political science and took only three or four courses in tax and accounting. (46, 47) [2] When he started work for Arthur H. Huene & Co. in 1953, he served as a junior accountant (48) and performed accounting functions of a routine nature under supervision of senior accountants. (49) His duties were routine (14, 50, 51), essentially clerical, requiring no accounting training, being those which any intelligent person with proper supervision could do. (51, 52) This experience hardly enabled plaintiff to classify himself as an accountant at a later time when he commenced his professional studies. Were it otherwise, any one could make a similar or equivalent connection and then deduct all expenses of professional education. This is not the purpose of the statute.

14. While in the Navy for four years, plaintiff performed varied functions: In the first five months of 1954 in Officers Candidate Training School; from April 1954 through March 1956, in Japan part of the time, arranging dependent transportation back to the United States via ship. (53) Then he was involved with "impressed funds" and "personnel" matters which were "non-accounting" duties.

2. All numbers in parentheses refer to pages of the trial transcript unless otherwise stated.

(54, 55) When he came to Brooklyn he was assigned to a "Colonel's-Captain's office" in the Military Sea Transportation Service (56) with various duties. (57) In plaintiff's "Report of Separation from the Armed Forces of the United States" (Ex. D) he described his most significant duty (while in service) as "student" and in his income tax return for 1956 (Ex. E) he gave his principal business activity as "Basketball Official." (90, 91) It is clear at this time that no matter what plaintiff had done before, he had not yet become an accountant by profession or in fact.

15. In 1956, when plaintiff entered the New York University Graduate School of Business he was in the Navy and not engaged in accounting. He said he hated to be idle and took courses which he thought would be of benefit to him "when he got out and went back into accounting." He analyzed the courses and decided he "might as well get a degree." (18) Twenty-four credits were required in order to take the New York examination as a Certified Public Accountant. (19) It is clear that at this time plaintiff was still not a qualified accountant. I find that plaintiff's purpose in attending New York University Graduate School of Business was to acquire new skills, those of accounting to qualify for a new profession, accounting, and to be a certified public accountant. It was not primarily to *maintain or improve his skills*, since, when he commenced these studies, he was not yet an accountant.

16. Just before completing his courses at New York University Graduate School of Business in September 1957, plaintiff commenced employment with Lybrand. Lybrand very seldom hired persons without accounting backgrounds. (62) It appear that the education acquired was actually aimed at meeting Lybrand's *initial* requirements. (60, 61) Certainly it cannot be said that the education was undertaken primarily for the purpose of *meeting express requirements of an employer imposed as a condition to retention by the taxpayer of his sal-*

*ary, status or employment,* since he had not yet been employed by Lybrand when he commenced his studies.

17. At the time plaintiff entered New York University Law School he had been employed by Lybrand for only a month. (29) At that time he had already completed four law courses at the Graduate School of Business. (Ex. B; 79–80) Many of the courses taken by plaintiff at the New York University Law School were not related to accounting. Such unrelated courses included criminal law, evidence, procedure, conflict of laws, and constitutional law. (Ex. 6) In a letter attached to plaintiff's amended federal income tax return for the year 1957, he stated that his reasons for attending law school were to gain better knowledge of tax procedures and regulations. (Ex. A) Plaintiff conceded that other courses relating to tax matters would have been more useful to him as an accountant. (66–73)

18. At least one reason why plaintiff became a degree candidate in law was that he could not qualify under the "G.I. Bill" unless he were such a candidate. (74–75, 77–79) Another reason given by plaintiff was "prestige" (82–85) and a further reason indicated by him was to recognize legal problems encountered in his accounting practice and to advise his clients as to a course of action. (26, 33, 35–36) Attendance at law school, he said, also helps an individual who wishes to advance from the audit department to the tax department. (111–112) In the spring of 1960, plaintiff entered the tax department on trial and officially in the spring of 1961 (94), about the time he completed law school.

Plaintiff was not required to attend law school as a condition of retaining his employment at Lybrand. Lybrand conducts its own educational program in courses such as accounting, taxation, etc. to help accountants in their practice. (144–145) Lybrand does not urge its accountants to attend law school. (143) All thirty partners of Lybrand are qualified to practice accounting (134) but only three partners of the thirty possess law

degrees. (127–128) It has not been demonstrated that it is customary for accountants to obtain law degrees.

19. In his application for admission to the New York Bar submitted to the Committee on Character and Fitness, sworn to by plaintiff on October 31, 1961 (Ex. C), plaintiff stated that he intended to practice law. At trial here he was asked: "Were you answering this truthfully at the time you answered it?" Plaintiff answered: "No." (86) When asked by the court: "Why did you do that?" plaintiff answered: "Because I would not have been admitted to the bar otherwise." (88) Obviously this statement of plaintiff is not indicative of his intent when entering law school, but is revealing as a factor of credibility of his testimony in respect to intent.

20. The law school education was not undertaken primarily for the purpose of maintaining or improving skills required by the taxpayer in his employment as an accountant, or of meeting any express requirements of the employer or requirements imposed as a condition to the retention by the taxpayer of his salary, status or employment. There was no such requirement by Lybrand.

## DISCUSSION

The plaintiff has not shown that either the costs of the professional education at the School of Business or the Law School are deductible by him under the circumstances of this case. At the School of Business he was not maintaining or improving his skills since he had not become an accountant. Since he was not so employed he cannot claim he expended funds for the School of Business degree to retain his employment. The Law School education was not to maintain or improve his skills. He was not a lawyer. Nor were the courses which he took related at all consistently to accounting. Thus, he fails to come within the provisions of the statutes.

The position taken by the Revenue Office here has been sustained by the courts. See Cross v. United States, 2 Cir., 336 F.2d 431 (1964); Condit v. Commissioner, 329 F.2d 153 (6th Cir. 1964), affirming 21 T.C.M. 1306 (1962); Spitaleri v. Commissioner, 32 T.C. 988 (1959); Sandt v. Commissioner, 20 T.C. M. 913 (1961), aff'd 303 F.2d 111, 3 A.L.R.2d 825 (3rd Cir. 1962); Gulbranson v. Commissioner, 22 T.C.M. 1022 (1963); Rev.Ruling 60–97, 1960–1 C.B. 69 and Example 10 thereunder.

Revenue Ruling 60–97, 1960–1 C.B. 69, Example 10, is significant in relation to the claimed law school expenses. That example provides:

"A trust officer in a bank undertakes to study law. The knowledge of law will be helpful in discharging his duties. His employer does not require him to engage in such studies. He registers for the entire regular curriculum leading to a bachelor of laws degree. Since the taxpayer is pursuing a complete course of education in law which will lead toward qualifying him in that field, in which he has not previously qualified, his expenses for such education are considered to have been incurred for the purpose of qualifying in that new field and are, therefore, not deductible. * * *"

See also Aronin v. Commissioner, 20 T.C. M. 909 (1961); Pfeffer v. Commissioner, 22 T.C.M. 785 (1963); Booth v. Commissioner, 35 T.C. 1144 (1961). In these cases the opinions adopt the conclusion that the study of law involved learning a new skill, rather than sharpening an old one.

Cases cited by plaintiff do not sustain his contention here since those opinions are based upon other factual conclusions as to the relationship of the study to the taxpayer's particular position, his obligations and the customs of the trade. Welsh v. United States, D.C., 210 F.Supp. 597 (1962), aff'd 329 F.2d 145 (6th Cir. 1964); Charlton v. Commissioner, 23 T. C.M. 420 (1964); Carlucci v. Commissioner, 37 T.C. 695 (1962); Schultz v. Commissioner, 23 T.C.M. 1372 (1964). The same is true of Frank Kilgannon v. Commissioner, 24 T.C.M. 619, CCH Decision 27,370 (M) (1965). There the court found as a fact that the law courses

pursued by the petitioner were of direct benefit to him in his accounting work. No such finding is justified on the evidence in this case.

■ It is well settled that provisions granting tax deductions are strictly interpreted and the taxpayer who asserts the deduction must demonstrate the application of the pertinent section to his own affairs. White v. United States, 305 U.S. 281, 293, 59 S.Ct. 179, 83 L.Ed. 172 (1938); Weible v. United States, 244 F.2d 158 (9th Cir. 1957) and cases cited therein.

The plaintiff has not sustained the burden which is his.

We note two final points stressed on reargument. First, there was no proof that it is customary for accountants to study law. In fact, the proof was to the contrary. (127–128) At the time of trial plaintiff's counsel asked to submit testimony in respect to persons in the accounting field who have studied law. This was as follows:

"Q. Do you know of other accountants who have legal training?

"MR. LEDERER: I object to that, your Honor.

"THE COURT: Sustained.

"MR. EDELSTEIN: Your Honor, the question goes to whether legal training is customary for accountants.

"THE COURT: Well, the fact that he knows other accountants who have legal training doesn't prove that. That doesn't prove that it is customary." (p. 39)

At the time of reargument the court asked plaintiff's counsel if he had any proof "of the profession as a whole with respect to the numbers of accountants who studied?" (September 17, 1965, p. 2) Counsel said "No," and added that he did not have it at the time of trial and made no such offer. (Ibid., p. 2)

Even if I considered the disputed testimony it is insufficient to show custom.

Secondly, the plaintiff apparently contends that if he is not allowed to deduct the law school expenses he should be allowed to amortize them. (September 17, 1965, p. 5) In other words, plaintiff would amortize the Law School expenses of 1957 ($1,471.20) and of 1958 ($848.00) over the working life of the taxpayer. (Ibid., p. 7) Plaintiff cited no authority for this claim of amortization. (Ibid., p. 7) I find none.

Here, the plaintif has not shown by a fair preponderance of the evidence that he is entitled to the relief sought.

CONCLUSIONS OF LAW

1. The court has jurisdiction of the persons and matters concerned herein under Title 28 U.S.C. § 1346(a) (1).

■ 2. Plaintiff's expenses in attending the New York University Graduate School of Business in 1956 and 1957 were not "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" within the meaning of Section 162 of the Internal Revenue Code of 1954.

■ 3. Plaintiff's expenses in attending the New York University Law School in 1957 and 1958 were not "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" within the meaning of Section 162 of the Internal Revenue Code of 1954.

■ 4. The plaintiff is not entitled to any deductions by reason of his claim of amortization of expenses at the New York University Graduate School of Business Administration or at the New York University School of Law.

5. The defendant is entitled to judgment with costs dismissing the complaint.

Settle judgment on notice.