STATE OF IOWA, Appellee, v. ALTA ERLE, Appellant.

No. 40391.

SEPTEMBER 22, 1930.

*Sam G. Pickus* and *R. A. Oliver,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *O. T. Naglestad,* County Attorney, for appellee.

DE GRAFF, J.—The State contends that the act charged in the information is within the purview of the provisions of the Iowa Child Labor Law, as defined in Section 1526, in Chapter 76, Code, 1927. The defendant-appellant contends that the act charged is not within the purview of the prohibition defined in said section, but is within the proviso or exception as defined therein. The only matter, therefore, that is involved on this appeal is the construction to be placed on the language of Section 1526, with special reference to the included exception.

We have nothing to do with the wisdom of the legislative policy in enacting the law in question. It is simply the exercise of the police power by the state, and so long as that power is not arbitrarily or unreasonably exercised, and not violative of constitutional provision, a court will not interfere. It must be conceded that the state may, in the exercise of its police power, prohibit the employment of such persons in defined occupations as are deemed dangerous either to the life or limb, or injurious to the morals or the future welfare of children of tender years; and by the same token, exceptions to the defined prohibition may be made. For a general discussion of this right and power see *State v. Shorey,* 48 Ore. 396 (86 Pac. 881; 24 L. R. A. [N. S.] 1121).

To what extent the supervision and control shall be exercised is a question of expediency, which is the province of the legislature to determine. We are here concerned with the legislative intent, and in arriving at the conclusion in the matter presented, every word, phrase, clause, and sentence must be read and studied, so that the actual meaning which the legislature intended to convey may be discovered.

It is necessary at the outset to quote the section of the Code under discussion. It reads:

"No person under 14 years of age shall be employed with or without compensation in any mine, manufacturing establishment, factory, mill, shop, laundry, slaughter house, or packing

house, or in any store or mercantile establishment where more than eight persons are employed, or in any livery stable, garage, place of amusement, or in the distribution or transmission of merchandise or messages; but nothing in this section shall be construed as prohibiting any child from working in any of the above establishments or occupations when operated by his parents.''

It may be observed that the initial words of this section constitute a prohibition, to wit: ''No person under 14 years of age shall be employed.'' The section then particularizes or specifies the prohibited *places*. In the exception or proviso in which instructions are given as to the *construction* of the language theretofore used, the reference is to occupation, to wit: working in any of the above establishments or occupations under the control and supervision of the owner or operator of any of such named establishments.

Let us, at this point, note the language used in the original act, found in Section 2477-a, 1915 Supplement (Section 1, Chapter 266, Acts of the Thirty-sixth General Assembly). The exception or proviso found there reads:

''Provided that nothing in this section shall be construed as prohibiting a child from working in any of the above establishments *or occupations when such are owned or operated by their own parents.*'' (Writer's italics.)

Section 1526, Code, 1927, is a codification of the original act. It changes the original language, but the general rule is that a codification does not, by a mere change of language, alter the meaning or construction to be given the language. We hold, therefore, that the exception as found in the present law must be given the same meaning and construction as found in the original law. In this connection it may be observed that Section 1527, Code, 1927, which is a part of the same enactment, emphasizes the fact that *places* are specified, and therein is used the word ''at,'' in relation thereto, and the section also refers to ''any of the occupations specified in the preceding section'' (Section 1526). It follows, therefore, that we must first consider *places*. The places are grouped, and the groups are connected with the disjunctive ''or.'' It is readily seen that each and every one of these places derives its designation by the nature

of the occupation or business carried on *at* the place, and it is for this reason that the places are so named. There would be no "mine" if there was no mining; there would be no "manufacturing establishment" if the occupation or business of manufacturing was not carried on *at* the place. All of the other specified places may receive the same analysis, and with the same result, except, perchance, the place "garage;" but the occupation or business carried on at such a place is well known, and the meaning of the word is accepted generally. It is *in* such specified *places* that persons under 14 years of age are prohibited from being employed by the owner or operator thereof, respectively. It follows logically that, inasmuch as the *places* derive their names or designations from the occupations carried on *at* and *in* those places, the prohibition must necessarily attach to the occupations carried on therein and thereat. The exception or proviso must be read:

"Nothing in this section shall be construed (even by the labor commissioner or court) as prohibiting any child from working *in* any of the above establishments (places) or occupations *when operated by his parents.*" (Writer's parentheses and italics.)

Let us suppose that a mother operated a parcel delivery business, with a desk and telephone in the corner of some hotel or other business establishment, for which she paid a rental. Let us further suppose that, whenever a person desired a package to be delivered, the telephone was used, and the mother sent her boy, under 14, to deliver the package, the mother receiving the fee for the delivery. Would anyone claim that the parent, under such circumstances, would be subject to the penalty provided in Section 1540 for violating the provisions of Section 1526? Apply the same test to the mother who made a contract with the Western Union, in which contract she agreed, at a fixed salary, to deliver or collect messages for said company. Would the mother who used her boy under 14 years to assist in carrying out her contract be within the prohibition of Section 1526? In both instances it must be said that it was the mother's business or occupation. The word "occupation" is a term of broad significance, and includes vocation, trade, calling, profession, office employment, or business by which one generally earns his or

978

her living. See *Kenny v. Bankers Acc. Ins. Co.*, 136 Iowa 140, l. c. 149; *Mortensen v. Central Life Assur. Assn.*, 124 Iowa 277.

The word "operate" is defined as "to act or control, or to manage authoritatively, to conduct or manage the affairs, or to direct," or, as said by this court in *Haller v. Quaker Oats Co.*, 181 Iowa 389, l. c. 397: "* * * to put in action, supervise the working of, put into or continue in operation * * *." See, also, Webster's New International Dictionary. The exception in the instant statute uses the words "when operated." Unquestionably, these words refer to the statutory phrase "above establishments or occupations." We must, therefore, accept a meaning as though the words "the same are," appeared before the word "operated," so as to make the clause read: "the above establishments or occupations when the same are operated by his parents." We cannot strictly say that a *place* may be operated. It is a figure of speech,—metonymy. As a transitive verb, to *operate* means "to put into * * * activity; * * * to work." A person cannot put a place *into* activity, but he can put activity *in* a place. It is reasonable to assume that by the words "when operated," the legislature intended the transitive meaning of the verb. In the instant case, it may be conceded that the mother did not operate the establishment: that is to say, she did not operate the theater, or place of amusement. The material question is, did she have an occupation? Yes. What was that occupation? Furnishing entertainment. Who operated it? The mother. Where? In the R. K. O. theatrical establishment, in Sioux City, Iowa, at the time in question. In brief, the mother operated the occupation and owned the act in which the boy was assigned a part at the time the complaint was filed. It is quite apparent from the record that the mother not only owned the occupation, but also operated it.

The facts of this case are not in dispute. It is disclosed that the defendant, Alta Erle, was the mother of the boy Broadus Erle. He was under 14 years of age. The mother had a contract with the Radio-Keith-Orpheum Company, and under the terms of said contract she was paid a stipulated sum per week for the production of the act in which her son Broadus played a rôle. The son was a musical prodigy, and was an artist in playing the violin. She directed from the wings of the stage the act owned by her. The boy's piano accompanist was em-

ployed by Mrs. Erle in the act. This was her only occupation, so far as the record discloses. The boy's accompanist was the tutor of the boy in the common-school subjects which were required for a pupil of his age to pursue in the public school which he attended at his home in Detroit, Michigan. The appearance of Broadus on the stage was twice daily, and in some houses three times a day, but never more than three times, which were at the hours of 3, 7, and 9 o'clock. The boy traveled with his mother, under her care and supervision, in her occupation, about ten weeks of the year. The boy was given every care possible, and secured the proper amount of sleep, the proper food, and every essential necessary for his health, which had always been very good.

The legislative intent in the enactment of the law under discussion is obvious. It was to prevent a child under 14 years from being employed by the owner or operator of the defined and prohibited establishments, in which, by the nature of the work or the place of employment, his health or moral welfare might be impaired. The legislature did except a child under 14 years when acting in the occupation of his mother, as in the instant case. She had a treasure in the child involved here, and the parent's incentive would naturally be to preserve that treasure. Under the provisions of Section 1526, the legislature recognized the fact that parents generally have sufficient interest in their own child or children to decide what is best for him or them, as defined in the exception, and left the question to be decided by the parent or parents.

A review of Child Labor Laws discloses quite a variance in the provisions of this class of legislation in the different states. We have been unable to find any decision of any court of last resort involving an interpretation of a law similar to Section 1526. In *Taylor v. State*, 112 Neb. 112 (199 N. W. 22), one question only was presented. Did defendant violate the statute? The Child Labor Law of Nebraska provides:

"No child under fourteen years of age shall be employed, permitted or suffered to work in, or in connection with any theatre, concert hall, or place of amusement * * *." Compiled Statutes of Nebraska 1922, Section 7669.

The Nebraska law does not contain the words "with or

without compensation.'' There is no exception or proviso. In that case, the girls in question were pupils of an instructor in dancing, acting, or singing, and the court said that their performances were, in a sense, lessons in those arts. We quote an excerpt from the opinion:

''A girl receives no compensation. Her appearance and experience before the public are voluntary * * *. It is the unanimous opinion of the court that the legislature did not use language forbidding what defendant did when he permitted the girls to appear on the stage under the circumstances shown in this prosecution. 'Be employed' and 'to work,' as those terms are used in the statute, when the entire act and the purposes of the legislation are considered, imply a contract of employment for compensation and work for hire pursuant to such a contract. * * * The girls in performing their little tasks in public were not under the control of defendant as master or employer.''

As to the appellant in the case at bar, we find (1) a parent, (2) operating a business or occupation in which her own son assisted her, which (3) gave to the establishment its designation as a place of amusement, because the very nature of her business or occupation was to amuse and entertain. It follows, therefore, as a matter of law, that she is within the exclusion or exception of Section 1526, and the court, under the legislative fiat, has received its instruction that the section *shall not be construed to prohibit her from using her own son* in her own occupation or operations. The judgment entered by the trial court is—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, ALBERT, WAGNER, and GRIMM, JJ., concur.