*Decision will be entered under Rule 50.*

LAURIE S. ROBERTSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86716. Filed March 28, 1962.

*John E. North, Esq.*, for the petitioner.
*David A. Pierce, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax in the amount of $249.17 for the taxable year 1958. The sole issue for decision is whether the petitioner, an assistant professor of economics at the University of Nebraska, is entitled to deduct as ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954 amounts expended in attending the University of Michigan for the purpose of completing work prerequisite to obtaining a Ph. D. degree.

Some of the facts are stipulated and are incorporated herein by this reference.

### FINDINGS OF FACT.

The petitioner is a resident of Omaha, Nebraska. He filed an individual Federal income tax return for the taxable year 1958 with the district director of internal revenue for the district of Nebraska.

In 1942 petitioner obtained an A.B. degree from the University of Nebraska, and in 1948 he obtained an M.A. degree from the same university. By March of 1953 he had been admitted to candidacy for the degree of Ph. D. at the University of Michigan and had completed all requirements for that degree except for completion of a doctorate dissertation, the subject of which had been approved, and work upon which was in progress.

On March 18, 1953, petitioner received a letter from Dr. E. B. Schmidt, chairman of the department of economics of the college of business administration, University of Nebraska, offering him employment at such university as an assistant professor. Such letter stated in part as follows:

I am very pleased to find that your preparation fits our needs so well. I hope that we will be able to work out a mutually satisfactory arrangement. I would like to count on you for public utilities, transportation, and two sections of money, credit, and prices for the first semester; trust problems (or a suitable substitute), problems of transportation and public utilities, and two sections of money, credit, and prices for the second semester. If Dr. Kennedy returns at the completion of his leave, we would expect you to fill out your program with a section of the principles perhaps.

I can offer you an assistant professorship at a beginning salary of $4,200. If the legislature grants the university's request for a "cost-of-living" increase, we may be able to do somewhat better than this. Appointments of course are upon an annual basis but so far as I know reappointments generally are automatic. You would be expected to complete your doctorate within a couple of years and to qualify yourself for membership on the graduate faculty soon thereafter. Recommendations for tenure and promotion are subject to review by those members of the department staff who hold higher ranks than the person under consideration.

I cannot at this time promise you the courses in transportation after next year. Dr. Kennedy has tenure and I think plans to return after he has finished his year's leave. However, should he determine otherwise, you would be well qualified to take over these courses.

If the above terms are agreeable, I will appreciate your letting me know as soon as possible. If there are any details that you would prefer to have altered, I will be glad to have your suggestions. * * *

On March 21, 1953, petitioner accepted the offer of employment in a letter to Dr. Schmidt in which he stated:

The offer in your letter of March 18, 1953, of an assistant professorship at a beginning salary of $4,200 with a possible upward adjustment, the pattern of courses which you have outlined, and the other conditions for my employment in your department are quite agreeable to me. You may take this letter to be an acceptance of your offer. * * *

This acceptance was acknowledged by Dr. Schmidt on March 24, 1953.

Petitioner began teaching at the University of Nebraska in September 1953, assuming all of the rights, duties, and obligations of an assistant professor in the department of economics in the college of business administration. Thereafter he received annual reappointments as an assistant professor, the salary being $4,200 for the academic year 1954–1955, $4,300 for the academic years 1955–1956 and 1956–1957, and $5,000 for the academic year 1957–1958. At the time of such reappointments no conditions were imposed upon him with respect to obtaining a Ph. D. degree.

By letter dated December 13, 1957, Dr. Schmidt, as chairman of the department of economics, advised the petitioner that, in accordance with the rules of the board of regents, he would not be recommended for reappointment for the next academic year. In such letter Dr. Schmidt stated in part:

This is because the rules do not permit us to continue an assistant professor beyond five years without tenure. I have not recommended tenure for the reason that you have not attained the Ph. D. degree in the period of over four years since you joined our department staff, and I understand there is little chance that it will be attained before next September.

However, since I believe that you have the ability to satisfactorily complete the Ph. D. requirements, I will recommend to the appropriate authorities that you be granted a one-year leave of absence in order to facilitate your completing your dissertation. If you complete the dissertation or carry it sufficiently far toward completion to remove any doubt concerning the ultimate outcome, it is my intention to recommend tenure at that time so that, if you elect to do so, you may rejoin the department staff. * * *

The appropriate authorities of the University of Nebraska decided that, instead of terminating the petitioner's employment, they would grant him a year's leave of absence for the purpose of completing his Ph. D. requirement in order to be retained on the staff of the department of economics, and such leave was granted.

At all times material herein, the rules and bylaws of the board of regents of the University of Nebraska provided in part as follows:

Assistant Professors may be initially appointed for terms of one or more years and may be reappointed for two or more such terms. No assistant professor shall be reappointed beyond his fifth year in this rank, or beyond a total of ten years of service as instructor and assistant professor at the University of Nebraska, unless he can be given academic tenure as assistant professor or unless he can be promoted in rank with academic tenure. An assistant professor shall attain academic tenure whenever he is officially notified that he has been given academic tenure. An assistant professor without tenure who is not to be or may not be reappointed shall be given notice on or before the fifteenth day of December, immediately preceding the expiration of his latest appointment year, unless some unforeseen financial exigency later renders his reappointment impossible or unwise in the judgment of The Board of Regents.

Such rules and bylaws provided with respect to tenure:

Academic tenure as used herein shall mean permanent tenure with continuous appointment, and, once acquired, shall be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies.

Such rules and bylaws do not set forth the requirements to be fulfilled as a prerequisite to obtaining tenure. All recommendations for tenure were initiated at the departmental level and each department had its own rules pertaining to the granting of tenure to its members.

In the case of the petitioner, the policy of the department of economics of the college of business administration applied. At the time of petitoner's appointment as an assistant professor in the department of economics, that department did not have a requirement that a staff member obtain a Ph. D. degree as a prerequisite to the granting of tenure. The policy pursued by Dr. Schmidt as chairman of that department, which he carried over from the former chairman, was to recommend for tenure any staff member who was considered to be doing a satisfactory job and who it was thought would be a good addition to the staff, whether or not he had obtained a Ph. D. degree. The policy underwent a gradual change, and at some time between 1953 and 1958 a definite policy was adopted, although not in written form, that recommendations for tenure would be conditional on the possession of a doctoral degree. Prior to the adoption of such definite policy several faculty members had been given tenure without having obtained Ph. D. degrees.

The courses in transportation and public utilities which the petitioner taught at the beginning of his employment attracted graduate students. Sometime during the period of petitioner's employment his course in public utilities was discontinued and thereafter he taught more courses in principles than had been contemplated at the time

of his employment. Dr. Schmidt considered it necessary that a faculty member supervising candidates for master and doctoral degrees be a member of the graduate faculty, a prerequisite to which was a doctoral degree. At the time the petitioner was first employed Dr. Schmidt had in mind that the petitioner would qualify himself for such graduate faculty as soon as possible and this was the reason for the statement in his letter of March 18, 1953, that the petitioner would be expected to complete his doctorate within a couple of years. Such statement, however, was not intended to constitute and did not constitute a minimum requirement for qualification for the position to which he was appointed, namely, that of assistant professor. At various times during the course of petitioner's employment at the university Dr. Schmidt had conversations with him concerning his obtaining a Ph. D. degree, and in 1956 Schmidt made inquiry of the chairman of the department of economics at the University of Michigan as to petitioner's progress toward such degree. However, at no time did Dr. Schmidt indicate to petitioner that his annual reappointments were conditioned upon his obtaining such degree. There was no obligation on the part of the university to reappoint petitioner annually and reappointment was based upon the needs of the department and the conditions which existed at that time.

After receiving the letter of December 13, 1957, the petitioner went to the University of Michigan and pursued studies directed toward obtaining a Ph. D. degree. He did not obtain such degree and did not return to the University of Nebraska. In connection with his attendance at the University of Michigan he expended the following amounts during the year 1958:

Expenses for education:
| | | |
|---|---:|---:|
| Cost of meals | $477. 50 | |
| Cost of lodging | 199. 00 | |
| Tuition, University of Michigan | 285. 00 | |
| Cost of shipping books, notes, and other study materials | 27. 70 | |
| | | $989. 20 |

Travel expenses:
| | | |
|---|---:|---:|
| Cost of transportation | 155. 67 | |
| Cost of meals | 15. 00 | |
| Cost of lodgings | 30. 00 | |
| | | 200. 67 |

Publications:
| | | |
|---|---:|---:|
| Books, pamphlets, other publications, and supplies | 111. 20 | |

| | | |
|---|---:|---:|
| Total | | 1, 301. 07 |

On his Federal income tax return for 1958 petitioner deducted the above amounts as ordinary and necessary business expenses. Attached to his return was a letter from Dr. A. Stuart Hall, the then chairman of the department of economics of the college of business

administration of the University of Nebraska, in which it was stated that petitioner's education at the University of Michigan was required by the University of Nebraska "as a condition to the retention of your salary, status, or employment."

In the notice of deficiency, the respondent disallowed as a deduction the total amount claimed by the petitioner for educational expenses.

The petitioner's education at the University of Michigan was undertaken primarily for the purpose of meeting the express requirements of the University of Nebraska imposed as a condition to the retention by him of his salary, status, or employment as an assistant professor, and was not undertaken in order to meet the minimum requirements for qualification for that position.

### OPINION.

The question presented is whether the amounts expended by the petitioner in the year 1958 in attending the University of Michigan are deductible as ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954,[1] or whether they constitute nondeductible personal expenses under section 262 of the Code.[2]

It is well established that the cost of education undertaken to qualify or establish oneself in a trade or business, or to meet the minimum requirements of a particular employment, constitutes a personal expense in the nature of a capital outlay and is therefore not deductible. *Welch* v. *Helvering*, 290 U.S. 111. However, as we stated in *Robert S. Green*, 28 T.C. 1154:

The law, concerning the deductibility of such expenses, has been fairly well established since *Hill* v. *Commissioner*, 181 F. 2d 906, which first laid out generally accepted rules to be followed in such cases. The *Hill* case held that such expenses were deductible to a schoolteacher, if they were incurred "to maintain her present position, not to attain a new position; to preserve, not to expand or increase; to carry on, not to commence." * * *

The Income Tax Regulations promulgated pursuant to the Internal Revenue Code of 1954 recognize these principles.[3]

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

[2] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

[3] Sec. 1.162–5 of the Income Tax Regulations provides in part:

Expenses for education.

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer

It is the respondent's contention that the petitioner was offered, and accepted, employment as an assistant professor at the University of Nebraska upon the condition that he would complete the requirements for, and obtain, his Ph. D. degree and that hence the expenses incurred were for education undertaken to establish himself in his position and are, therefore, not deductible. He points to the fact that in the letter of March 18, 1953, the chairman of the department of economics of the University of Nebraska advised the petitioner that he would be expected to complete his doctorate within a couple of years, and to the fact that in the letter of December 13, 1957, the chairman advised the petitioner that he would not be recommended for reappointment for the next academic year because the rules of the university did not permit the continued employment of an assistant professor beyond 5 years without tenure and that tenure was not recommended because petitioner had not attained his Ph. D. degree.

The petitioner, on the other hand, contends that the letter of March 18, 1953, in referring to the obtaining of a Ph. D. degree, did not thereby impose a minimum requirement for the position which petitioner was offered and accepted, or impose a condition to the obtaining of permanent tenure in his position; but that, on the contrary, it was not until some later time that the department of economics adopted a definite policy that a Ph. D. degree would be required as a prerequisite to tenure. The petitioner therefore contends that when, in 1957, he was advised that he would not be recommended for appointment for the next academic year and was granted a leave of absence to facilitate the completion of his work for a Ph. D. degree in order to meet the requirements for a recommendation for tenure, this amounted to an express requirement of his employer newly imposed as a condition to the retention by him of his salary, status, or

of his salary, status or employment. * * * Except as provided in the last sentence of paragraph (b) of this section, in the case of teachers, a written statement from an authorized official or school officer to the effect that the education was required as a condition to the retention of the taxpayer's salary, status, or employment will be accepted for the purpose of meeting the requirements of this paragraph.

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

* * * * * *

(d) If a taxpayer travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. * * *

employment, within the intendment of the regulations, with the result that the cost of the education undertaken is deductible.

The question is essentially one of fact. Based upon a consideration of the whole record, we have concluded and have found as a fact that the education in question was not undertaken in order to meet the minimum requirements for qualification for the petitioner's position as an assistant professor, but, rather, was undertaken primarily for the purpose of meeting the express requirements of the university, imposed subsequent to his initial employment, as a condition to the retention by the petitioner of his salary, status, or employment as an assistant professor. In reaching this conclusion we have taken into consideration the facts that in communications to the petitioner the university expressed the view that he was well qualified for the position, that the university continued to reappoint him annually, even after the expiration of 2 years, without requiring that he obtain his doctorate, and that the university had granted tenure to a number of other faculty members without their having obtained Ph. D. degrees. Furthermore, both the petitioner and Dr. Schmidt, the chairman of the department of economics, testified to the effect that at the time of the petitioner's original appointment the obtaining of a Ph. D. degree was not a prerequisite to the granting of tenure as an assistant professor in that department. Dr. Schmidt testified that at the time the petitioner was first appointed the policy was to recommend tenure, frequently at the end of 3 years of successful and satisfactory teaching, even though the faculty member had not obtained a Ph. D. degree. He further testified that thereafter the policy gradually changed and that later it became the definite policy to require as a condition to tenure that the faculty member obtain such a degree. He stated, in effect, that the reason for stating, in the letter of March 18, 1953, that the petitioner would be expected to complete his doctorate within a couple of years was that he hoped the petitioner would thereby qualify himself as a member of the graduate faculty in order to supervise candidates for graduate degrees.

It is our conclusion, therefore, that the expenditures incurred by the petitioner in attending the University of Michigan constitute ordinary and necessary business expenses under section 162 of the Internal Revenue Code of 1954.

The instant case is distinguishable from *Robert M. Kamins*, 25 T.C. 1238, cited by the respondent, in which we held that expenses incurred in obtaining a Ph. D. degree were not deductible. In that case it clearly appeared that the possession of a Ph. D. degree was an essential requirement of the taxpayer's position as a research associate and that he was employed with the understanding that he would obtain such degree. Nor did the petitioner in the instant case

undertake the education for the purpose of obtaining a new position, as was true in *Joseph T. Booth III*, 35 T.C. 1144, also cited by the respondent.[4]

We hold that the respondent erred in disallowing the deduction of the claimed educational expenses. It is unnecessary to consider the further contention of the petitioner that the education was undertaken primarily for the purpose of maintaining or improving skills required by him in his employment.

*Decision will be entered for the petitioner.*

---

[4] It is clear that the petitioner undertook the education, during his leave of absence, in order to meet the requirements of his position as assistant professor at the University of Nebraska. It may also be pointed out that the respondent does not contend that the petitioner was not engaged in a trade or business by virtue of the fact that he was not actually engaged in teaching at the time he incurred the cost of the education involved. The university did not terminate his employment but granted him a leave of absence. In Rev. Rul. 60–97, 1960–1 C.B. 69, the respondent took the position that a taxpayer will not be considered to have ceased to engage in his employment or other business during an off-duty season, when he is on vacation, "or when he is on temporary leave of absence."