NATHANIEL A. DENMAN AND LUCILLE G. DENMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

NATHANIEL A. DENMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3515–62, 3955–62.    Filed June 26, 1967.

Nathaniel A. Denman, pro se.
*Frederick A. Griffen*, for the respondent.

TURNER, *Judge:* Respondent determined deficiencies in income tax against petitioners as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 3515-62 | Nathaniel A. Denman and Lucille G. Denman_____ | 1958<br>1959<br>1960 | $129.19<br>84.45<br>497.00 |
| 3955-62 | Nathaniel A. Denman and Lucille G. Denman_____ | 1956 | 758.33 |
| | Nathaniel A. Denman_____ | 1957 | 1,145.07 |

The issues for decision are as follows: (1) Whether Nathaniel A. Denman, sometimes hereinafter referred to as petitioner, is entitled to deduct in each of the taxable years a prorata part of the cost of his college or higher education as an allowance for depreciation of his engineering degree; (2) whether for the taxable years 1956 and 1957 he is entitled to deduct his lodging and living costs incurred by him at his places of employment; (3) whether he is entitled to deduct as an ordinary and necessary expense amounts claimed as having been paid to his minor sons for services rendered as "office boys" during the years 1957 through 1960; and (4) whether he is entitled to depreciate and deduct the cost of a sailboat during any of the taxable years at issue.

### FINDINGS OF FACT

Certain facts have been stipulated by the parties and are found accordingly.

Petitioners Nathaniel A. Denman and Lucille G. Denman were husband and wife at all times material hereto. For the taxable years 1956, 1958, 1959, and 1960 they filed joint Federal income tax returns with the district director of internal revenue, Boston, Mass. For the taxable year 1957, petitioner Denman filed a separate income tax return with the district director of internal revenue, Boston, Mass.

*Engineering Degree and Travel and Living Expense Issues*

### FINDINGS OF FACT

Petitioner Denman attended Drexel Institute of Technology in Philadelphia, Pa., from 1941 to sometime in 1943 and from the summer

of 1946 to sometime in 1947, at the end of which time he received a degree in engineering. For some period not shown as to dates, petitioner also attended Amherst for two terms.

Petitioner's education at Drexel was interrupted by a period of military service beginning in 1943 and ending sometime in 1945 or 1946. During this period of military service, he spent at least 1 month as a cadet at the U.S. Military Academy and approximately 2 years and 2 months as a cadet at the U.S. Coast Guard Academy. While a cadet at the Coast Guard Academy, petitioner received training in sailing and became a member of the sailing team and a sailing instructor but without compensation.

Petitioner did some graduate work at Stephens Institute of Technology between 1948 and 1950 and took some specialized training at Sparlon's School of Deep Sea Diving and Marine Salvage sometime prior to 1950.

Petitioner computed the cost and useful life of his engineering degree as follows:

|  | | | | Per term | | | |
|  |  |  |  | Books, supplies, equipment | Trans- porta- tion | Clothes | Total |
| Name of institution | Tuition | Room | Board | Books, supplies, equipment | Trans- porta- tion | Clothes | Total |
|---|---|---|---|---|---|---|---|
| Drexel Inst., 1st five terms | ---- | ---- | ---- | ------ | ---- | ---- | $2,500 |
| Industrial term, Drexel | ---- | $120 | $240 | ------ | ---- | ---- | 360 |
| Drexel Inst., 2d five terms | $500 | 120 | 240 | $100 | $60 | $20 | 5,200 |
| Amherst, two terms | ---- | ---- | ---- | ------ | ---- | ---- | 1,750 |
| West Point, 1 month | ---- | ---- | ---- | ------ | ---- | ---- | 1,100 |
| Coast Guard Academy, 2 2/12 years | ---- | ---- | ---- | ------ | ---- | ---- | 14,473 |
| Stevens—graduate work | 30 | 48 | (all other expenses) | | | ---- | 312 |
| Total cost as of 1950 | ---- | ---- | ---- | ------ | ---- | ---- | 25,695 |

Retirement age—social security ____ 1987
Depreciation started ____ 1950

Useful life ____ 37 years

The cost of the first five terms at Drexel Institute was estimated by the petitioner. His family paid for some part of his expenses. The cost of the second five terms at Drexel Institute was estimated and was paid for primarily by the U.S. Government through the GI bill. During this period, the petitioner received $90 per month plus tuition costs from the Government.

The cost of petitioner's attendance at the U.S. Coast Guard and U.S. Military Academies was estimated and was at all times borne by the U.S. Government.

Petitioner arrived at a claimed useful life for his engineering degree arbitrarily by using a retirement age of 65.

Of the amount claimed by petitioner as the cost of his engineering degree no more than a negligible portion represented cost to him or was paid from funds for which he was liable or obligated to repay.[1]

In his returns for the years indicated petitioner claimed deductions as allowances for depreciation on his engineering degree, all of which were disallowed by the respondent, as follows:

1956—$694, 1957—$694, 1958—$694, 1959—$694, 1960—$694.

From 1956 and during the years at issue, petitioner was variously employed as a salaried engineer and in a business activity called by him Basic & Experimental Physics. This latter activity was of the nature of a sole proprietorship involving almost exclusively the individual efforts of Denman, with very limited assistance from his wife, Lucille.

Insofar as appears, the principal business activity carried on under the name of Basic & Experimental Physics consisted of correspondence directed to corporations and others with potential projects for which the services of qualified engineers would be required and to engineers who might be procured for the work. In effect, Denman's business, to the extent he engaged in it during these years, was basically that of a middleman who contracted to supply or find qualified engineers, scientists, mathematicians, and technicians for the projects he was able to line up.[2]

Petitioner started operating as a consulting engineer in 1952 and has operated under the name Basic & Experimental Physics on a limited basis since 1953. In 1956, he received a certificate of registration as a registered professional engineer from the Commonwealth of Massachusetts. His activities as a consultant involved machine engineering, mechanical design, and electrical, electro-mechanical and magnetic design. For the most part these activities were for firms engaged in research and development work in both military and commercial fields.

His business activities conducted in and from Falmouth were conducted from his home. By his description he served at times as a consultant, at other times as a contract engineer. In some instances he was an employee. He received his compensation variously in the form of fees, salaries, and hourly wages.

To insure access to a pool of scientific skills and talents, Denman prepared and sent out various lists of current openings for scientific and engineering consulting contracts to be filled by engineers and scientists recruited by him. In lists or brochures he undertook to state

[1] Most, if not all, of the evidence introduced by petitioner to substantiate the cost or useful life of his engineering degree consists of approximations based primarily on his personal opinions and interpretations.

[2] Petitioner's extensive testimony with respect to the nature of "Basic and Experimental Physics" and its activities, actual and prospective, does not lend itself to findings with any nicety.

specific skills required of the applicant as well as technical description of the work to be done by engineers and scientists recruited by Basic & Experimental Physics and the salary and benefits for prospective job applicants. He advertised for personnel in various journals and in response received applications which included résumés of the education and experience of the applicants. Employment was generally on a contract basis whereby the individual in question was to supply his services for a specified period of time, with extensions based upon mutual consent and convenience. Normally, the supervision of the jobs contracted for by Denman and then subcontracted to persons obtained by him under the auspices of Basic & Experimental Physics was done by senior consultants who were also obtained by Denman. In some cases the supervisors were the supervisor-management personnel of Denman's clients, and occasionally Denman served as supervisor. The actual work under these contracts sometimes took place at the offices of the firms concerned and in the case of Denman sometimes from the office in his home.

During the taxable years, petitioner's business name and his principal business activity as shown on his returns were as follows:

| Year | Principal business activities | Business name |
|---|---|---|
| 1956 | Professional engineer services, nursing, rental, and other forms of businesses with the possibility of making (or losing) money legally. | Basic & Experimental Physics, Denman Marine, Lucille Denman, R.N., and Nat Denman. |
| 1957 | Engineering, business, Denman Marine, etc. | Basic & Experimental Physics, Denman Marine, L.G. Denman, R.N., N.A. Denman. |
| 1958 | Engineering, sales; engineering services. | Basic & Experimental Physics. |
| 1959 | Engineering, sales, nursing, marine engineering, and trade. | Basic & Experimental Physics. |
| 1960 | Research and development, engineering, etc. | Basic & Experimental Physics, Lucille Denman, R.N., Denman Marine. |

During the same years, petitioner's occupation as shown on his returns was as follows:

| Year | Occupation |
|---|---|
| 1956 | Engineer–entrepreneur |
| 1957 | Businessman, engineer |
| 1958 | Engineer, sales |
| 1959 | Engineer, salesman |
| 1960 | Engineer–diver–manager |

While employed from sometime in 1956 to sometime in 1958 as a salaried engineer, petitioner received compensation from the following corporations in the following amounts as shown by his returns:

| Year | Corporation | Place of employment | Wages |
|---|---|---|---|
| 1956 | Crosley Division | Waltham, Mass | $8,405.32 |
| | Avco Manufacturing Corp | Boston, Mass | 754.00 |
| | | | 9,159.32 |
| 1957 | Boeing Airplane Co | Lexington, Mass | 10,034.88 |
| 1958 | Boeing Airplane Co | Lexington, Mass | 1,908.27 |

As shown by his returns for the taxable years, petitioner's gross receipts, gross profit, and net profit from his principal business activity, that conducted under the name of Basic & Experimental Physics, were as follows:

| Year | Gross receipts | Gross profit | Net profit (or loss) |
|---|---|---|---|
| 1956 | $13,837.21 | $1,115.42 | ($4,170.15) |
| 1957 | 41,552.18 | 2,788.82 | (2,209.32) |
| 1958 | 33,727.91 | 7,235.02 | 1,361.84 |
| 1959 | 57,590.05 | 10,529.88 | 2,266.93 |
| 1960 | 111,292.66 | 17,530.89 | 8,588.24 |

During the years 1956 and 1957, the petitioner claimed the following travel and living expenses on his returns:

| | 1956 | 1957 |
|---|---|---|
| Schedule C | $373.32 | $1,341.23 |
| Unreimbursed travel and living expense | 373.31 | |
| Reimbursed travel and living expense included as income | | (1,341.23) |
| Reimbursed travel and living expense deducted | | 1,341.23 |
| Total deduction | 746.63 | 1,341.23 |

These claimed expenses were purportedly incurred at the general sites of Denman's corporate employers during 1956 and 1957 and consisted in the main of amounts expended for a room near these jobsites. During his off hours and in his room above described Denman at times did work in furtherance of his venture carried on under the title Basic & Experimental Physics.

When petitioner accepted employment with the Crosley Division located in Waltham, Mass., sometime in 1955, there was no time limit agreed to between him and his employer with regard to the length of time he was to stay once he passed the probationary period. After that he could have stayed on with Crosley had he so desired.

When petitioner accepted the position with Boeing Airplane Co. in December of 1956, there was no time limit agreed upon except that Denman had to pass the probationary period. His employment with Boeing ceased on January 13, 1958, after his refusal to a transfer to Seattle, Wash.

At the time petitioner accepted employment with the Crosley Division in 1955 and at all times material to the years involved his family residence was in Falmouth, Mass., which is approximately 70 to 80 miles from the Greater Boston area.

### OPINION

Petitioner contends that he is entitled to depreciate and deduct the cost of his engineering degree under section 167(a) of the Code

of 1954.[3] Respondent, in opposition, maintains that the engineering degree in question is not property as contemplated within the meaning of section 167, *supra*, but is rather an end product of educational training, the cost of which is a nondeductible personal expense under section 262.[4]

It is well established that the cost of education undertaken to qualify or establish oneself in a trade or business, or to meet the minimum requirements of a particular employment, constitutes a personal expense and is therefore not deductible. *Welch* v. *Helvering*, 290 U.S. 111; *Laurie S. Robertson*, 37 T.C. 1153, 1158; *T. F. Driscoll*, 4 B.T.A. 1008.

Section 162 of the 1954 Code provides generally for a deduction for all ordinary and necessary business expenses incurred during the taxable year in carrying on any trade or business, and section 1.162–5 of the regulations thereunder provides that the cost of obtaining education is deductible where the education undertaken by the taxpayer is primarily to maintain or improve the skills required in his employment or to meet the express requirements of an employer, or applicable law or regulations, where such requirement, law, or regulation is imposed as a condition to the retention by the taxpayer of his salary, status, or employment.[5] The regulation goes on to state that the deduction is not allowed where the education involved is primarily for the purpose of obtaining a new position, substantial advancement in position, or fulfilling the general educational aspirations or other personal purposes of the taxpayer. There is no provision in the statute which by specific words provides for the deduction of expenditures incurred in obtaining an education and apart from section 1.162–5 of the regula-

---

[3] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for exhaustion, wear and tear (including a reasonable allowance for obsolescence) —

    (1) of property used in a trade or business, or

    (2) of property held for the production of income.

[4] Unless otherwise indicated, all references are to the Internal Revenue Code of 1954, as amended.

[5] Sec. 1.162–5 of the Income Tax Regulations provides in part as follows:

Sec. 1.162–5. Expenses for education.

(a) Expenditures made by a taxpayer for his education are deductible if they are for education * * * undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

   *       *       *       *       *       *       *

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. * * *

tions there is no such allowance under any regulation. Expenditures by a taxpayer for his education other than those allowable under subsection (a) of the regulation have been held to be personal [6] and not deductible. *Knut F. Larson*, 15 T.C. 956, and T.B.M. 39, 1 C.B. 131; see and compare *Hill* v. *Commissioner*, 181 F. 2d 906.

Neither is petitioner's case improved by the contention that the expenditures for his education should be capitalized rather than treated as expense items for the year or years in which they were incurred. Expenditures which are not deductible because personal are not made any less personal or transformed into business expenditures through the mechanics of capitalizing them as cost of an engineering degree so as to supply a basis for claiming a deduction therefor as depreciation. See and compare *Huene* v. *United States*, 247 F. Supp. 564.

It may now be regarded as elementary that deductions are a matter of legislative grace and a taxpayer seeking a deduction must bring his claim clearly within the statute. Any doubts as to the applicability of a deduction statute are to be construed against not in favor of the deduction. As in *Huene*, we find no authority for the deduction claimed. We accordingly hold for the respondent.

In view of our conclusion above we need not decide what part of the total cost of petitioner's college or higher education constituted cost to petitioner.

Under section 162(a) of the Code a deduction is provided for traveling expenses, including the entire amount for meals and lodging, while away from home in the pursuit of a trade or business.

The expenses claimed as travel and living expense deductions by petitioner on his returns for 1956 and 1957 represented in the main amounts expended by him for lodging in Waltham, Boston, and Lexington, all in the Boston area, during his employment in those places by Crosley, Avco, and Boeing. The record is clear that the expenditures in question were incurred by reason of petitioner's employment in those areas by the three named employers and we have so found. It is equally clear that Denman was not away from home in the pursuit of the individually conducted business carried on by him under the name Basic & Experimental Physics. There is no showing whatever that it was anything connected with Basic & Experimental Physics that was the occasion for his being and living in Waltham, Boston, or Lexington. Not only was it because of his employment with Crosley, Avco, and Boeing that he was away from Falmouth but his employment in those places was of indefinite duration.

---

[6] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

We accordingly conclude and hold that the claimed expenses were the normal personal living expenses of Denman while residing at the sites of his employment and were not travel and living expenses while away from home in the pursuit of his business within the meaning of the statute. See *Flowers* v. *Commissioner*, 326 U.S. 465, and *S. M. R. O'Hara*, 6 T.C. 841.

### Business Expense for "Office Boys" Issue

FINDINGS OF FACT

During the years specified, petitioner claimed business expense deductions as compensation paid to his sons in the amounts shown below, all of which were disallowed by the respondent:

| | Mark | | Burke | | Scott | | Total |
|---|---|---|---|---|---|---|---|
| | Amount | Age | Amount | Age | Amount | Age | |
| 1957 | $260 | 8 | | | | | $260 |
| 1958 | 500 | 9 | $500 | 8 | | | 1,000 |
| 1959 | 520 | 10 | 520 | 9 | | | 1,040 |
| 1960 | 520 | 11 | 520 | 10 | $520 | 7 | 1,560 |

These funds were placed in bank accounts for the children.

During the years 1957 through 1960, inclusive, petitioner's sons, either individually or collectively, performed various light tasks, ran errands, and provided various services such as washing windows, taking down and cleaning screens, shoveling snow, mowing grass, tending shrubs, trees, and underbrush, assembling various papers, picking up mail, and stuffing, stamping, and labeling envelopes.

Petitioner's business for which his sons allegedly performed these services during the years involved herein was Basic & Experimental Physics. During the same years, the office housing this business was located in petitioner's personal residence at Falmouth, Mass. This residence was situated on one-half acre of land and consisted of 10 rooms, two baths, an attic, and a shed.

The front room of petitioner's residence served as the office for the business. In addition, the shed, part of an upstairs room, and part of the attic were partially utilized for some purpose of the business not shown in the record. The office equipment consisted of two desks, two tables, telephones, chairs, lamps, a portable typewriter, a card file, and a mail rack.[7]

---

[7] We have checked the entire record to find reference to an adding machine in the home or office of the petitioner, to which he alluded in his testimony; and the only reference thereto is in the transcript with respect to adding machine tapes which were allegedly prepared by petitioner's minor sons.

Petitioner's wife, Lucille G. Denman, had been associated with Basic & Experimental Physics since 1953. She received a B.A. in sociology and philosophy from the College of Wooster, Wooster, Ohio, in 1941, and a degree of Master of Nursing from the Yale University School of Nursing at New Haven, Conn., in 1944. She also spent 2 years as a Navy nurse beginning in August of 1944. From 1946 through sometime in May of 1949, she worked at the New York Psychiatric Institute in New York City, N.Y.

The petitioner did not apply for or obtain a work permit for any of his sons during the years in issue from the Commonwealth of Massachusetts.

A reasonable allowance for compensation for the services rendered to petitioner by his sons in the conduct of his business during the years specified was in amounts as follows:

|  | Mark | | Burke | | Scott | | Total |
|---|---|---|---|---|---|---|---|
|  | Amount | Age | Amount | Age | Amount | Age |  |
| 1957 | $35 | 8 |  |  |  |  | $35 |
| 1958 | 65 | 9 | $60 | 8 |  |  | 125 |
| 1959 | 70 | 10 | 65 | 9 |  |  | 135 |
| 1960 | 75 | 11 | 70 | 10 | $40 | 7 | 185 |

OPINION

Petitioner contends that the amounts which he paid to his minor sons for services rendered as "part-time office boys" are deductible as ordinary and necessary expenses on the ground that such amounts were reasonable wages paid by a father to his minor children for personal services actually rendered as bona fide employees in the conduct of his engineering business, and are, therefore, deductible. In support of his position, petitioner relies on I.T. 3767, 1945 C.B. 101, in which the ruling was that under section 22(a)(1) of the 1939 Code, as added by section 7 of the Individual Income Tax Act of 1944, "reasonable" wages paid by a father to his unemancipated minor child for personal services actually rendered as a bona fide employee in the conduct of a trade or business, or in the production of income, are deductible as ordinary and necessary expenses for Federal income tax purposes, for taxable years after December 31, 1943.

Essentially, petitioner argues that the relationship between himself and his sons was that of a contractor-subcontractor, or substantially that of an employer-employee; that the contested amounts were reasonable and were paid for work actually performed; and that it is common knowledge that office boys are normally utilized for the kind of work allegedly performed by his sons. Much emphasis is placed by Denman on the alleged reasonableness of the $1 per hour paid

the sons during these years as well as the importance of their work in preparing adding machine totals for income tax work.

Respondent, in opposition, urges that the claimed deductions are not allowable because the children's ages (7 to 11 years old) preclude a finding that they performed valuable and worthwhile services for a business to the extent of deductions ranging from $260 to $1,500 per year. It is respondent's view that these amounts constituted a weekly personal allowance which was placed in bank accounts for future use, and that no bona fide employer-employee relationship in fact existed. Respondent argues further that if a bona fide employer-employee relationship did exist, such employment is in violation of the laws of the Commonwealth of Massachusetts and that the employment and payment of wages is therefore in violation of public policy.

In support of his contention that the employment of minor children by Denman in his home (assuming that an employer-employee relationship in fact existed) is violative of the laws of Massachusetts and, hence, to allow the deduction of wages paid to these children would contravene a fixed public policy, respondent relies on chapter 149, secs. 1, 56, 86, and 90 of the Annotated Laws of Massachusetts. We recognize that an expense, even though ordinary and necessary in the generally accepted sense, is not deductible if allowance of the deduction would frustrate sharply defined national or State policies proscribing particular types of conduct, evidenced by some governmental declaration thereof. *Commissioner* v. *Tellier*, 383 U.S. 687. However, respondent has not directed our attention to any statute or governmental pronouncement of the Commonwealth of Massachusetts to support his contention. Nor has he cited any case wherein the Child Labor Laws of Massachusetts, under similar circumstances, were given the interpretation contended for. Furthermore, from our reading of the various provisions of the Massachusetts Statutes it would appear that parents and guardians are specifically excepted from being in violation of the said statutes where the employment is on a farm or within the house area, or does not entail hazardous activity. See sections 1, 56, 86, and 90, *supra*, cited by respondent. See also ch. 149, secs. 60, 61, and 87, Mass. Ann. Laws.

Admittedly, some Child Labor Laws (in States other than Massachusetts) specifically provide that children of certain age groups may not be "hired out" by their parents or guardians in any factory or mercantile establishments or other places where the health or welfare of the children would be imperiled. Although the statutes of Massachusetts relating to Child Labor Laws do not use the phrase "hire out," there are several sections of said laws where parents and guardians are specifically excluded from violating these laws. Mass. Ann. Laws, ch. 149, secs. 56, 60, 61, 87. Apparently, in those instances where the

Child Labor Laws of the State permit the parent, guardian, or blood relative to employ the minor, which would be violative of the statute for other employers, the legislature recognized the fact that parents generally have sufficient interest in their own child or children to decide what is best for him or them, as defined in the exception, and left the question of welfare of the minor to be decided by the parent or guardian. See *State* v. *Erle*, 232 N.W. 279.

We are not persuaded by the evidence before us that Denman's children during the taxable period involved herein performed valuable and substantial services for his business to the extent of the amounts purportedly paid as salaries and for which deductions as ordinary and necessary expenses have been claimed. We have found as a fact that Denman's sons performed a number of light tasks and routine chores around the house and office during these years. Out of those described they were in very substantial degree tasks which might be more sensibly and reasonably called household chores.

While we do not question the good faith in which petitioner testified, we are not impressed by the assertions that the tasks performed by his sons played any material part in his Basic & Experimental Physics operation. The record shows that during the taxable period involved petitioner's sons ran errands and provided various services such as washing windows, taking down and cleaning screens, shoveling snow, mowing grass, tending shrubs, trees, and underbrush, assembling various papers, picking up mail and stuffing, stamping, and labeling envelopes. The ages of his sons during the years they allegedly provided these services were 8 through 11, 8 through 10, and age 7, respectively, for Mark, Burke, and Scott. The approximate average number of hours worked per week claimed for the respective sons in petitioner's office during those years was 5 hours by Mark in 1957, 10 hours each by Mark and Burke in 1958 and 1959, and 10 hours each by Mark, Burke, and Scott in 1960. Considering these factors and particularly the domestic character of many of the tasks performed, it is our view that these part-time services were in the main part of parental training and discipline rather than the services rendered by an employee for an employer. Most of the tasks performed related to Denman's real property and home; were more in the nature of routine family chores; and on the basis of the description of the work done little of it would be properly allocable to Basic & Experimental Physics.

Although we found that the children performed some tasks and chores around the house and office, we do not believe that their services were of such value and usefulness as to warrant a business deduction of the amounts purportedly paid as salaries. After careful consideration of the evidence before us and using our best judgment, we have found that the amounts as set forth in our findings of fact for the

years as specified represent reasonable allowances for compensation for the services rendered to petitioner by his sons in the conduct of his business and are deductible as such. See *Cohan* v. *Commissioner*, 39 F. 2d 540, 544, and *Samuel Rottenberg*, 20 B.T.A. 589.

## Depreciation of Sailboat Issue

### FINDINGS OF FACT

Respondent disallowed depreciation on a boat claimed by petitioners for the following years and in the following amounts:
1956—$40, 1957—$40, 1958—$40, 1959—$40, and 1960—$40.

Sometime in 1954, petitioner purchased a 16-foot sailboat of the Comet class. This class of boat is suitable primarily for racing and is normally utilized for sports sailing. Petitioner considered sailing as one of his hobbies prior to and during the year of purchase.

The boat was moored at Falmouth Harbor, Falmouth, Mass., during August of 1954. Hurricane Carol struck the Falmouth area during that same month and thereafter the boat, though undamaged, was removed from the water.[8] After the boat was withdrawn from the water in 1954 it was never used for any purpose.

### OPINION

With respect to amounts claimed as deductions for depreciation of a sailboat, petitioner is entitled to the claimed depreciation deductions only if he meets the requirements of section 167(a) of the 1954 Code. That section provides generally for a depreciation deduction for property used in the taxpayer's trade or business or property held for the production of income.

It was petitioner's testimony that it was his original intent when purchasing the boat in 1954 to use it for giving sailing instructions and for rental. It was his further testimony that after Hurricane Carol struck in August of 1954 it was removed from the water and never thereafter used for any purpose, although in 1955 he did consider using it for experimental work in the application of hydrofoils to sailboats.

The evidence does not show that the boat was ever used in a trade or business carried on by petitioner or held by him for the production of income. We accordingly hold on this issue for the respondent.

Other matters have been disposed of by stipulations of the parties and effect will be given to the stipulations in computations under Rule 50.

*Decisions will be entered under Rule 50.*

---

[8] The record indicates that the boat survived another hurricane which followed the first but there are no facts of record as to the approximate date or surrounding circumstances.