William and Marjorie M. Kinch v. Commissioner.
Kinch v. Commissioner
Docket No. 1970-70 SC.
United States Tax Court
T.C. Memo 1971-117; 1971 Tax Ct. Memo LEXIS 215; 30 T.C.M. (CCH) 502; T.C.M. (RIA) 71117; May 20, 1971, Filed William Kinch, pro se, 207 Whitehall Dr; O'Fallon, Ill.Ted M. Riseling, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined a deficiency of $318.08 in petitioners' income tax for the taxable year of 1967. The only issue for determination is whether petitioners can deduct as ordinary and necessary business expenses under section 162(a) [1] William Kinch. Findings of Fact Some of the facts have been *216 stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. William V. Kinch (hereinafter referred to as William) and Marjorie M. Kinch are husband and wife, and at the time of filing their petition herein resided in O'Fallon, Illinois. They filed their joint Federal income tax return for the taxable year 1967 with the district director of internal revenue, Kansas City, Missouri. William enlisted in the United States Air Force in March 1953. He served in a noncommissioned capacity until March 1960, when he completed Officers Candidate School and was commissioned as a second lieutenant in the United States Air Force Reserve. After receiving his commission, William attended Navigation School. Upon completion of that school, he was assigned to McGuire Air Force Base, New Jersey, where he served as a standardization navigator, Air Force Specialty Code 1535. His principal duty as a standardization navigator consisted of flying with other navigators and evaluating their performance in accordance with existing Air Force standards. William was voluntarily placed on career reserve status in 1963 in accordance with the provisions of the *217 Air Force 20-year active service career program. This generally entitled William to a maximum of 20 years' active duty service as a reserve officer with the Air Force from the date of his enlistment in 1953, unless otherwise extended for an indefinite period of time in accordance with Air Force requirements or emergency needs. A reserve officer would have to retire from active service after 20 years regardless of his educational level. Under the program, William, as a reserve officer, would have been required to retire on March 31, 1973, at the age of 38. William began taking night courses in September 1964 at Trenton State Teachers College, Trenton, New Jersey, for the purpose of eventually obtaining a baccalaureate degree. When he reached the point where he needed but 1 year of full-time study to obtain a degree, William applied for and was granted 10 months temporary duty under the Air Force's Operation Bootstrap program to attend the University of Omaha, at Omaha, Nebraska. The University of Omaha has a degree program specifically designed to accommodate armed service personnel with educational needs such as William's. William attended the University of Omaha from September 19, 1966 until *218 June 5, 1967, when he received a Bachelor of General Studies degree with a major in 503 Business Administration. During 1967 he took courses in money and banking, philosophy of religion, personnel organization and management, municipal administration, and industrial psychology. While he was enrolled in the University of Omaha, William received his full Air Force pay. However, all educational costs, such as meals, lodging, tuition, books, and travel expenses, were paid by William, and he was not entitled to reimbursement from the Air Force. During all the time relevant hereto, there was no official Air Force requirement of a baccalaureate degree in order to receive or retain a commission in the United States Air Force Reserve. Following his graduation from the University of Omaha, William returned to his permanent station at McGuire Air Force Base for a short period of time where he resumed his duties as a standardization navigator. In August 1967, William was transferred to Scott Air Force Base, Illinois. Although he was still officially designated as a standardization navigator, he was placed in charge of a data processing section, which position he continues to hold. William *219 was promoted to captain in 1964, but remained in the Air Force Reserve until September 1967 when he was considered for, and awarded an appointment at the rank of captain in the regular Air Force. He had not been offered a regular commission the first two times he was eligible. Under Air Force procedures, William was considered a third and last time for a regular appointment only after he had completed 7 years of commissioned service. The fundamental advantage to being a regular officer rather than a reserve officer is that a regular officer can possibly remain on active service beyond 20 years if the rank of lieutenant colonel is achieved. All persons William knew who had received regular commissions had baccalaureate degrees. This fact along with his receipt of a fixed retirment date of March 31, 1973, led William to conclude he needed a baccalaureate degree in order to be offered a regular commission. The Air Force and the Department of Defense have a policy of encouraging officers without baccalaureate degrees to obtain them. Presently a baccalaureate degree is a prerequisite to obtaining a new commission in the Air Force. On his 1967 Federal income tax return, William deducted *220 a total of $1,737.50 as educational expenses which included the costs of travel, meals, lodging, books and tution incurred while attending the University of Omaha during 1967. In a statutory notice dated December 29, 1969, respondent disallowed the deduction in whole for the asserted reason that William has not established he was entitled to the deduction. Opinion The only question before the Court is whether costs incurred by the petitioner, William V. Kinch, while attending the University of Omaha during 1967 constitute ordinary and necessary business expenses under section 162(a) [2] or personal expenses under section 262. [3] Since there is no specific statutory provision governing the deduction of educational expenses, respondent's regulations "take on an added significance." Burke W. Bradley, Jr., 54 T.C. 216, 218 (1970). The regulation dealing with educational expenses, section 1.162-5, Income Tax Regs., comes in two versions. The original version of the regulation was adopted in 1958, [4] the second version is an amendment to the 1958 regulation promulgated in 1967. [5] The 1967 regulation applies to educational expenses incurred during 504 taxable years beginning *221 after January 1, 1968. The respondent, however, has followed a policy of allowing taxpayers to rely on either the 1958 or the 1967 regulation in claiming deductions for taxable years beginning before January 1, 1968. Rev. Rul. 68-191, 1968-1 C.B. 67. Since the petitioners did not indicate which regulation they were relying on, it must be presumed they are relying on each regulation in the alternative which is permissible. Burke W. Bradley, Jr., supra, at 219; Ronald F. Weiszmann, 52 T.C. 1106, 1108 (1969) on appeal (C.A. 9, April 8, 1970).
*222 William's sole contention is that his educational expenses are deductible because a baccalaureate degree was a condition for his retention in the Air Force. Allegedly an appointment as a regular officer is not offered to a reserve officer on active duty in the Air Force unless the officer has some sort of baccalaureate degree, and a regular commission is necessary in order to remain in the Air Force for more than 20 years. Under the 1958 regulation, as applied to this case, William must have undertaken his education at the University of Omaha in 1967 for the "primary purpose" of meeting "express requirements" imposed by the Air Force as a condition to William's retention of "salary, status, or employment." Section 1.162-5(a)(2), Income Tax Regs., as promulgated by T.D. 6291, 1958-1 C.B. 63, 67. The primary purpose of a taxpayer in undertaking educational activities is a question of fact, and the intent of the taxpayer is to be determined upon a consideration of all the facts and circumstances of the case. Burke W. Bradley, Jr., supra, at 221; Marvin Leroy Lund, 46 T.C. 321, 331 (1966). As the regulation states, a requirement that one *223 achieve certain educational goals to retain employment, must be an express one. Lawrence H. Bakken, 51 T.C. 603, 611 (1969), affirmed per curiam, 435 F. 2d 1308 (C.A. 9, 1971). The facts only indicate that the Department of Defense and the Air Force had a policy of encouraging officers without degrees to obtain them, and that the Air Force would go to great lengths to implement this policy including the granting of extended leaves of absence with pay. William also testified that all officers he knew who had been offered regular commissions had baccalaureate degrees. From the mere fact that additional education was encouraged by his employer or that such education would be helpful to him, we cannot conclude that William was pursuing his education to satisfy an express requirement of his employer. James A. Carroll, 51 T.C. 213, 217 (1968), affirmed 418 F. 2d 91 (C.A. 7, 1969). The educational requirement must have been a condition to the retention of salary, status or employment as existing at the time the educational expenses were incurred. Yaroslaw Horodysky, 54 T.C. 490, 492 (1970). At the time William was pursuing *224 his studies at the University of Omaha, he was a reserve officer on active duty with the Air Force. There was no requirement that an individual, to continue in that situation, had to have a baccalaureate degree. William had a permanent position which he could have retained without going to college. See, Owen L. Lamb, 46 T.C. 539, 544 (1966). Even if the baccalaureate degree can be considered a requirement imposed by the Air Force, it was a requirement not to maintain status but to improve it. Becoming a regular officer put William in a position where he could potentially stay in the Air Force beyond the normal 20-year period accorded reserve officers, and thus possibly achieve a higher rank and more pay. William, in effect, was improving his educational level so as to qualify himself for a new and better employment contract with his employer, rather than meeting newly imposed requirements to retention in his then current position. Laurie S. Robertson, 37 T.C. 1153, 1160 (1962). We conclude that under the 1958 regulations, William did not have the primary purpose of satisfying an express requirement of his employer for retention when he pursued studies *225 at the University of Omaha during 1967. Rather William was obtaining a general college education which would be helpful in preparing him for his desired career as an officer in the regular Air Force. James A. Carroll, supra, at 216. To sustain his position under the 1967 regulations, William must show that the education was undertaken to meet the 505 "express requirements" of the Air Force "imposed as a condition to the retention" by William "of an established employment relationship, status, or rate of compensation." Section 1.162-5(a)(2), Income Tax Regs. as amended by T.D. 6918, 1967-1 C.B. 36, 37. The 1967 regulation provides an objective test, Burke W. Bradley, Jr., supra, at 219. As with the 1958 regulation, the 1967 regulation demands that a taxpayer undertaking education to insure retention of employment must be responding to an express requirement of his employer. Arthur M. Jungreis, 55 T.C. 581, 588 (1970). Also the express requirement must be related to an "established employment relationship." Thus it can be readily seen that under the facts of this case the 1967 regulation is no more helpful to William than is the 1958 regulation. *226 William relied exclusively on the theory that his educational expenses were incurred in meeting the express requirements of his employer for retention of employment, and he offered no evidence showing a direct and proximate relationship between the courses he took and his trade or business. Thus we are unable to say that under either the 1958 or the 1967 regulations, any part of William's 1967 educational expenses were incurred to improve and maintain skills required in his trade or business. Burke W. Bradley, Jr., supra, at 220; James A. Carroll, supra, at 218. For the reasons given, we decide that the amounts expended by William on education in 1967 do not constitute ordinary and necessary business expenses, but rather are nondeductible personal expenses. Decision will be entered for the respondent. Footnotes
1. All stautory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *. ↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
4. Sec. 1.162-5. Expenses for education. (a) General Rule. Expendition made by a (a) General Rule. Expenditures made by a taxpayer for his education are deductible if they are for education * * * undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. * * * ↩
5. Sec. 1.162-5. Expenses for education. (a) General Rule. Expenditures made by an individual for education * * * are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.↩