T.C. Summary Opinion 2016-10

UNITED STATES TAX COURT

JOHN H. FISHER AND LISA M. FISHER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24480-11S.                    Filed March 8, 2016.

John H. Fisher and Lisa M. Fisher, pro sese.

Luanne S. DiMauro, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated July 28, 2011 (notice), respondent determined deficiencies in, and penalties with respect to, petitioners' Federal income tax for 2006, 2007, and 2008.

After concessions, the issues for decision for each year are whether petitioners: (1) are entitled to a trade or business expense deduction for "wages to minor children"; (2) are entitled to various trade or business expense deductions for amounts expended in connection with Lisa M. Fisher's (petitioner) book writing activity; and (3) are liable for a section 6662(a) accuracy-related penalty.

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in New York.

At all times relevant here, petitioners were attorneys practicing in New York--petitioner as a sole proprietor, and Mr. Fisher as a partner in an Albany, New York, law firm. Mr. Fisher is also the author of at least two books relating to the practice of law.

---

[1](...continued)
Internal Revenue Code of 1986, as amended, in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners have three children, all of whom were under nine years old as of the close of 2008. Petitioners maintained a section 529 qualified tuition program account (section 529 account) for each of their children.

Petitioner's Law Practice

During the years in issue petitioner's law office was in rented space in Kingston, New York. During 2006 and for a part of 2007 she also served as a part-time law clerk to a New York judge.

During summer school recesses petitioner often brought her children into her office, usually for approximately two hours a day, two or three days a week. She did this because at times other family members were not available to care for the children and also because, according to petitioner, "day care was cost-prohibitive for * * * [petitioners], and so * * * [she] had the children working for * * * [her] in the office instead." Petitioners also believed that allowing their children to work in petitioner's office would help to teach the children about the value of money and develop a healthy work ethic.

While at petitioner's office the children provided various services to her in connection with her practice. For example, the children shredded waste, mailed things, answered telephones, photocopied documents, greeted clients, and escorted clients to the office library or other waiting areas in the office complex. The

children also helped petitioner move files from a flooded basement in 2006; they helped her remove files damaged in a bathroom flood in 2007, and they helped to move petitioner's office to a different office in the same building in 2008.

Petitioner did not issue a Form W-2, Wage and Tax Statement, to any of her children for any year in issue; no payroll records regarding their employment were kept, nor were any Federal tax withholding payments made from any amounts that might have been paid to any of them.

Petitioner's Book Writing Activity

During 2006 in connection with her law practice and at the request of a client, petitioner traveled to the Czech Republic for an extended period. Because Mr. Fisher could not take time away from his employment to tend to the children, petitioner took them with her on the trip. She was concerned about entertaining the children during the long car rides she anticipated taking during the trip and came up with the idea of writing a book about the country that would be informative and hold the children's interest or, as she testified, "keep them busy", while traveling by car. She had no previous experience writing or publishing books. It later occurred to her that other parents traveling with children might be interested in travel books created for children, and she decided to write a series of

children's travel books each directed to a different destination in the United States or elsewhere.

During the years in issue petitioner traveled with petitioners' three children to Disney World in Orlando, Florida, and several cities in Europe. According to petitioner, the purpose of each trip was to conduct research for a yet-to-be written children's travel book. Before traveling to a particular destination petitioner typically would complete a rough draft of a children's travel book. She and the children used the rough draft to tour the area, and petitioner would record any helpful hints or other information she thought should be included in the final version of the children's travel book that she planned to complete at some future date. In 2006, 2007, and 2008 petitioner devoted approximately 2, 10, and 20 hours a week, respectively, to her book writing activity.

Sometime in 2007 petitioner consulted with one of her clients, Gabrielle Euvino, a published author, who gave her advice with respect to writing and/or publishing books. Ms. Euvino has written at least three published books, each related in one way or another to the Italian language.

From 2007 through 2008 petitioner and Ms. Euvino spoke regularly about petitioner's plans regarding publishing children's travel books. Ms. Euvino introduced petitioner to a book distributor, who suggested that petitioner hire a

graphic designer. She did so at some point not disclosed in the record. During the years in issue petitioner also consulted with Rhatiya Hill, a friend who worked in the children's book department of the HarperCollins publishing company. Ms. Hill recommended that petitioner hire an agent, but she had not done so as of the close of 2008.

Petitioner ultimately completed at least four "prototype" travel books although she cannot remember the order in which she wrote them other than that the travel book for Rome was first.[2]

To the extent that any of the prototypes were completed during the years in issue, petitioner did not submit any of them for publication. During 2008 she sold "some of the books" by "word-of-mouth" in response to specific requests from friends and/or clients planning to travel with their children to various locations.

Petitioner planned to hire an agent by the end of 2009, but as of the close of that year had not yet done so. Petitioner did not submit any proposals to any publishing company during any of the years in issue. To the extent that she did during 2009, none were accepted. By the close of that year she had decided to

---

[2]It might be that the only existing versions of these "prototypes" are now part of the evidentiary record in this case. If so, and if petitioners want those items returned, then application for the return of the exhibits may be made pursuant to Rule 143(e)(2).

self-publish her books using an Internet Web site; however, it is unclear whether any of her books were ever sold through the Web site.

Petitioners' Federal Income Tax Returns

For each year in issue petitioners' timely filed joint Federal income tax return was prepared by a certified public accountant (return preparer). As relevant here, each return includes two Schedules C, Profit or Loss From Business, one relating to petitioner's law practice and the other to petitioner's book writing activity.

Among other items and as relevant here, on the 2006, 2007, and 2008 Schedules C relating to petitioner's law practice, petitioners: (1) reported gross income of $5,500, $10,953, and $12,273, respectively; (2) deducted "wages to minor children" of $10,435, $10,313, and $8,022, respectively; and, (3) taking into account other deductions not here in dispute, reported net losses of $39,073, $36,696, and $29,220, respectively. The net losses shown on the Schedules C are taken into account in the computation of the adjusted gross incomes reported on petitioners' 2006, 2007, and 2008 returns.

Petitioners reported income and expenses on the Schedules C relating to petitioner's book writing activity, as follows:

| Item | 2006 | 2007 | 2008 |
|---|---|---|---|
| Income: | | | |
| Gross receipts or sales | -0- | -0- | $479 |
| Gross income | -0- | -0- | 479 |
| Expenses: | | | |
| Depreciation and sec. 179 | $2,200 | -0- | -0- |
| Legal and professional | 150 | -0- | 750 |
| Office | -0- | -0- | 296 |
| Rent or lease of vehicles, machinery, and equipment | 1,334 | $2,819 | 2,014 |
| Supplies | -0- | 625 | -0- |
| Meals and entertainment | 2,913 | 2,494 | 1,371 |
| Other[1] | 15,300 | 26,033 | 16,205 |
| Total | 21,897 | 31,971 | 20,636 |
| Net profit (loss) | (21,897) | (31,971) | (20,157) |

[1]"Other expenses" reported on the Schedules C for 2006, 2007, and 2008 include lodging, airfare, and entrance fees.

These net losses are also taken into account in the adjusted gross income reported on petitioners' 2006, 2007, and 2008 returns.

Notice of Deficiency

In the notice respondent: (1) disallowed all of the deductions for wages to minor children claimed on the 2006, 2007, and 2008 Schedules C relating to petitioner's law practice; (2) disallowed all of the deductions claimed on the 2006 and 2007 Schedules C relating to petitioner's book writing activity; (3) disallowed all but $479 of the deductions claimed on the 2008 Schedule C relating to

petitioner's book writing activity; and (4) imposed a section 6662(a) accuracy-related penalty for each year in issue on several grounds, including "negligence or disregard of rules or regulations" and "substantial understatement of income tax". Other adjustments made in the notice need not be discussed as the adjustments are computational or have no consequence to the deficiencies here in dispute.

### Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[3] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to substantiate expenses for deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate

---

[3]Petitioners do not claim and the record does not show that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs.

As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has incurred an expense contemplated by section 162(a), but the taxpayer is unable to adequately substantiate the amount of expense, then the Court may estimate the amount of such expense and allow the section 162(a) deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Otherwise, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

The types of deductions here in dispute are allowable, if at all, under section 162(a). That section generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v.

Heininger, 320 U.S. 467, 475 (1943). On the other hand, section 262(a) generally disallows a deduction for personal, living, or family expenses.

With these fundamental principles in mind, we turn our attention to the deductions here in dispute.

Petitioners claim a deduction for wages to minor children on the Schedule C relating to petitioner's law practice for each year in issue. According to petitioners, the children provided various services to petitioner in connection with her law practice, and petitioners should be entitled to a deduction for the compensation the children were paid for doing so. According to respondent, petitioners have not established that the wages were actually paid or that any payment that was made was a payment for an ordinary and necessary business expense.

As noted, section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including compensation for personal services actually rendered. Compensation is deductible only if it is (1) reasonable in amount, (2) based on services actually rendered, and (3) paid or incurred. Eller v. Commissioner, 77 T.C. 934, 962 (1981).

If an amount deducted as wages involves a familial relationship, then the Court (not to mention the Internal Revenue Service) closely scrutinizes the transaction to determine whether there is a bona fide employer-employee relationship and whether or not payments were made for services actually performed for the business. See Denman v. Commissioner, 48 T.C. 439, 450 (1967). This is particularly true when the deduction is attributable to payments from a parent to the parent's child. A normal supposition when payments are made to dependent children or when items are purchased by a parent for dependent children is that the money or items are in the nature of support and nondeductible. See sec. 262; Holtz v. Commissioner, T.C. Memo. 1982-436. On the other hand, payments made to minor children by a related party for services rendered in connection with the payor's trade or business might very well qualify for deduction. See Denman v. Commissioner, 48 T.C. at 448-451. As with many issues we see, all of the facts and circumstances surrounding the payments must be considered.

Keeping in mind the requirement that any deduction for compensation must be reasonable, we first note that we cannot tell from what has been presented how much was paid to each of petitioners' children. Nor can we tell how many hours each worked or what the hourly rate of pay might have been. Without records

showing these details, we cannot tell whether the amounts deducted were "reasonable", especially when the ages of the children are taken into account.

Furthermore, according to petitioner, payments to her children for services rendered to her law practice were made in part by contributions into their section 529 accounts and in part in cash so that the children could purchase "books, things they needed, chachkies [sic], souvenirs, things of that nature". According to Mr. Fisher, payments to his children for services rendered to petitioner's law practice were made solely by contributions to their section 529 accounts although he testified that only portions of the contributions were reported as wages. According to petitioners' return preparer, the deductions were not computed with reference to the childrens' section 529 account contributions.

As noted, petitioner did not issue a Form W-2 to any of her children for any year in issue, nor did she maintain payroll records with respect to any payments that might have been made. Furthermore, at trial petitioners did not present any documentary evidence, such as bank account statements, canceled checks, or records for their childrens' section 529 accounts, that support the deductions.

All things considered, we find that petitioners have failed to establish their entitlement to the deductions for wages to minor children as claimed on the 2006, 2007, and 2008 Schedules C relating to petitioner's law practice. We are satisfied,

however, that each of petitioners' children performed services in connection with petitioner's law practice during each year in issue and each was compensated for doing so. Taking into account their ages, generalized descriptions of their duties, generalized statements as to the time each spent in the office, and the lack of records, we find that petitioners are entitled to a $250 deduction for wages paid to each child for each year. See Cohan v. Commissioner, 39 F.2d at 543-544; Vanicek v. Commissioner, 85 T.C. at 742-743.

According to petitioners, petitioner's book writing activity fits within the definition of a trade or business within the meaning of section 162(a) for each year in issue. Therefore, according to petitioners, the expenses petitioner paid or incurred in carrying on this activity should be allowed as deductions.

Although they could not substantiate the expenses underlying the deductions for wages to petitioners' children, apparently petitioners were able to substantiate their book writing activity expenses to respondent's satisfaction. According to the notice, however, petitioners are not entitled to deductions for these expenses because the activity "does not meet the guidelines of carrying on a trade or business within the meaning of * * * section 162(a)". Arguments presented in respondent's pretrial memorandum lead us to believe that the "guidelines" referenced in the notice are found, at least in part, in section 1.183-

2(b), Income Tax Regs. Those guidelines, more commonly referred to as "factors", are applied to determine whether a taxpayer conducts an activity with an "actual and honest" profit objective, or a profit motive. See Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983). Expenses paid by a taxpayer in connection with an activity not conducted by the taxpayer with an actual and honest profit objective are not allowable under section 162 but might be allowable under some other provision of the Internal Revenue Code. See, e.g., sec. 183.

In considering whether a taxpayer's activity constitutes a trade or business within the meaning of section 162(a), we examine not only the taxpayer's profit motive, but also whether the business was conducted with continuity and regularity and as a means of earning a living. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). More fundamentally, before a section 162(a) deduction is allowable, the business must have actually commenced. See Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965).

Separate and apart from the hurdles petitioners face in satisfying the tests set forth in Groetzinger and the above-referenced regulation, after considering their evidence we are left with the firm conviction that if petitioner's book writing

activity ever matured into a trade or business within the meaning of section 162(a), it did not do so before the close of 2008.

The idea to write children's travel books did not occur to petitioner until 2006 and then only because of a business trip related to her practice of law. For the rest of that year and throughout 2007 and 2008, petitioner's activities are best described as planning and/or research in connection with the business she had in mind. As of the close of 2008, petitioner had not yet hired an agent, she had not yet completed a final version of any book, she had not yet submitted any proposal to any publishing company, and she had not yet had any products to offer for sale to the general public.

Under the circumstances, we decline to rule on whether petitioner conducted her book writing activity with the requisite profit motive as respondent would have us do. Instead, assuming without finding that she did, we find that as of the close of 2008, to the extent that petitioner's book writing activity ever became an active trade or business, it had not done so as of the close of 2008.[4]

---

[4]As noted, petitioner sold some books during 2008 in response to specific requests from friends or clients for the books. We also note that respondent allowed deductions in 2008 to the extent of the income from that activity. See sec. 183(b). Deductions allowable under that section presume that the activity was not conducted for profit, a point that we decline to rule upon. Nevertheless, given the small amount involved, we are not inclined to disturb respondent's allowance in

(continued...)

That being so, petitioners are not entitled to the deductions claimed on the Schedules C for petitioner's book writing activity.

Section 6662(a) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2).[5] "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A); sec. 1.6662-4(b), Income Tax Regs.

Respondent bears the burden of production with respect to the imposition of the penalty here in dispute, see sec. 7491(c), and that burden has been satisfied for each year in issue because the understatement of income tax, which equals the

---

[4](...continued)
that regard.

[5]In this case, the deficiencies, underpayments of tax, and understatements of income tax are all computed in the same manner. See secs. 6211, 6662(d)(2), 6664(a).

deficiency, exceeds $5,000 for each year in issue, see secs. 6211, 6662(d)(2), 6664(a).  Furthermore, with respect to the portions of the underpayments attributable to the disallowed amounts of the deductions for wages to their children, we find that petitioners were negligent within the meaning of section 6662(b)(1) because they failed to keep adequate books and records regarding those expenses.  See sec. 1.6662-3(b)(1), Income Tax Regs.

That being so, it is petitioners' burden to establish that the imposition of the penalty is not appropriate.  See Higbee v. Commissioner, 116 T.C. 438, 447 (2001); see also Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment.  Sec. 1.6664-4(a), Income Tax Regs.  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances.  Id. para. (b)(1).  Under certain circumstances, a taxpayer's reliance upon professional advice may establish the taxpayer's "reasonable cause" and "good faith" with respect to an underpayment of tax if the taxpayer establishes that (1) the professional was provided with complete and accurate information, (2) an incorrect return was a result of the

preparer's mistakes, and (3) the taxpayer demonstrates good faith reliance on a competent professional. See Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000); see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). According to petitioners, the penalties are not applicable because they relied upon their return preparer with respect to the deductions here in dispute.

We agree with petitioners, at least with respect to the underpayments of tax attributable to the deductions claimed on the Schedules C relating to petitioner's book writing activity. Petitioners apparently kept records sufficient to substantiate the deductions for the various expenses shown on the Schedules C, and their return preparer readily admitted at trial that he advised petitioners that they were entitled to deduct those expenses. Given the same set of circumstances, reasonable minds could differ over when a taxpayer's trade or business commences or whether a taxpayer conducts an activity with the profit motive necessary to allow the activity to be treated as a trade or business within the meaning of section 162(a). Petitioners are not liable for a section 6662(a) penalty with respect to the portion of the underpayment of tax attributable to the

disallowance of the deductions for petitioner's book writing activity for any of the years in issue.

The same is not true with respect to the portions of the underpayments of tax attributable to the now disallowed portions of the deductions for wages for petitioners' children. Taking into account the ages of the children, the reasons the children were with petitioner at her office, the amount of time they spent in petitioner's office, the lack of substantiating records to support the payments, and the amounts of the claimed deductions, we find that petitioners' decision, albeit with the concurrence of their return preparer, to claim those deductions renders them liable for the section 6662(a) accuracy-related penalty on the portions of the underpayments of tax attributable to the portions of those deductions that exceed the amounts here allowed.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.